THE STATE, EX REL. SERGI, APPELLEE, *v.* CITY OF YOUNGSTOWN, APPELLANT.

(No. 2711—Decided January 8, 1941.)

Mr. D. F. *Rendinell,* for appellee.

Mr. John A. *Willo,* director of law, and Mr. Israel *Freeman,* for appellant.

By the Court. This cause is in this court on appeal on questions of law from the judgment of the Common Pleas Court of Mahoning county, Ohio, wherein that court held invalid and enjoined the operation of a certain ordinance of the city of Youngstown, entitled "An ordinance to regulate the operation of games of skill within the city of Youngstown, Ohio, and to provide a license therefor, and repealing ordinance No. 36318."

The action was brought in the Common Pleas Court by the state of Ohio, on the relation of Joe Sergi, a taxpayer of the city of Youngstown, Ohio, under the provisions of Sections 4311 and 4314, General Code.

Bond, as required by Section 4314, General Code, was filed on behalf of the relator at the time of instituting the action.

The amended petition alleges and the answer admits that, prior to filing the petition, written request was made of the law director of the city of Youngstown, Ohio, to bring suit in the Court of Common Pleas to restrain the operation of the machines and issuance of licenses, and have the ordinance declared invalid, which request was refused.

The amended petition of the relator further alleges and the evidence conclusively shows that the relator, Joe Sergi, on whose relation the petition was filed, was a taxpayer of the city of Youngstown, Ohio, at the time

the action was instituted. The petition specifically sets forth that he brings this action as a taxpayer on behalf of the city of Youngstown and on behalf of all taxpayers and pursuant to Section 4314, General Code, the allegations bringing the action clearly within the provisions of the General Code authorizing an action to restrain the city from exceeding its corporate powers.

The answer of the city alleges that relator's amended petition is bad in substance and form; that relator has not the legal capacity to maintain the action; and that the amended petition does not state a cause of action against respondent. There is no merit in these allegations.

Respondent complains that the case, by order of the Common Pleas Court, was set for trial before rule day, and was heard and adjudicated within one month from the filing of the petition, before the city had a chance to move or plead and otherwise prepare its defense.

The petition of relator was filed May 29, 1940. On that day summons and copy of the petition were duly served, together with notice of hearing to be held June 10, 1940, on application for temporary restraining order, the notice of hearing on such application also appearing in the Legal News for a week previous to June 10, 1940, on which day the city appeared by its counsel. Relator was granted leave to file an amended petition instanter, which was done, and respondent was granted leave to answer instanter. By agreement of counsel the case was continued to be heard on its merits on June 19, 1940. After two days of trial, the city for the first time raised the question of being unduly rushed in the trial and claimed that the proceedings were irregular and illegal, whereupon further hearing was continued to July 1, 1940, the answer of the city being filed on June 28, 1940, the answer day named in the summons.

It does not appear that further time for preparation

was requested, or that before the decision of the case by the court further objection or complaint was interposed as to the irregularity of the proceedings. We find no abuse of discretion upon the part of the trial court or anything in connection with the proceedings which worked to the prejudice of respondent, or prevented it from having a full and fair hearing upon the merits of the case. It is not unusual or irregular for respondent in an action of this kind to consent that the final hearing on the merits of the case be had at the time fixed for hearing the application for temporary restraining order, and having so consented in this case the respondent is estopped to claim prejudice on that account.

If any further opportunity was desired by the city to present the case fully, either upon the law or upon the facts, the appeal to this court could have been had upon questions of law and fact and a trial *de novo* secured herein. That such appeal was not filed clearly indicates that the claim of irregularity of the proceedings in the lower court is not made in good faith.

Certain claims are made by respondent of error in the admission of incompetent testimony in the lower court. We have examined and carefully considered such claims and find no prejudicial error in that respect.

The real question in this case is whether the ordinance authorizes the licensing and operation of gambling devices, contrary to the anti-gambling statutes of Ohio or the lottery provisions of the Constitution.

The general laws of the state of Ohio prohibit anyone to keep or exhibit devices for gambling and provide a penalty for whoever permits gambling by any device or machine in any place of which he has the care or possession. Sections 13056 and 13066, General Code. These so-called anti-gambling statutes are police regulations and the municipal corporation is without

power to enact any ordinance providing for police regulations in conflict with the general statutes of the state.

The constitutional grant of authority to municipal corporations to adopt laws for their local self-government expressly prohibits the adoption of police regulations in conflict with general laws, and this prohibition cannot be circumvented by language, however adroitly expressed, in an ordinance. The fact that Youngstown is a charter city is immaterial. If in fact the legislation licenses and permits the operation of gambling machines or devices, then the language of the ordinance designating such devices as games of skill is ineffective to prevent the ordinance being in conflict with the general statutes prohibiting gambling. Any attempt so to circumvent the Constitution and general laws constitutes an "abuse of corporate power." This is as apparent as though the city by ordinance should attempt to legislate that within the city the killing of another with deliberate and premeditated malice shall not constitute murder in the first degree, or any degree, but may be lawfully committed by anyone obtaining a license upon payment of a prescribed fee. Such attempt would be as futile as passing an ordinance to the effect that fire is cold and ice is hot, or that the laws of gravitation do not operate in the city of Youngstown, or that black is white, simply because the ordinance so states.

We find it proper, therefore, to examine the language of this ordinance defining "games of skill" and compare therewith the machines actually operated and licensed thereunder within the city.

In section 1, the ordinance undertakes to define "games of skill" by the use of the following language:

"The term 'games of skill' as used in this ordinance is herewith defined and shall be construed to mean any game or device played with any machine, mechanism,

contrivance, or device of the following kind or description or similar thereto, to wit:

"Any machine, mechanism, contrivance, or device designed, constructed, or intended to be operated by skill and that can be operated or put in condition for operation in part by the use of coins or slugs."

Apparently on the theory that repetition would add virtue to the attempt to legalize gambling in the city, it was provided in section 2 of the ordinance:

"Any machine, mechanism, contrivance, or device of a kind or description as set forth in section 1 hereof or similar thereto is hereby declared to be a machine for the playing of games of skill."

Section 3 of the ordinance provides that:

"No person shall operate or conduct a machine for the playing of games of skill which necessitates the insertion of a nickel or more before the machine can be operated, unless he shall first secure a license and pay a license fee of twenty ($20) dollars * * * for the current year * * * ."

Section 4 of the ordinance provides a license fee of five dollars per year for machines which necessitate the insertion of a penny before the machine can be operated.

Section 5 provides a fine of $50 to be paid by anyone operating or conducting, without a license, a machine designed for the playing of games of skill, and section 6 prohibits the admission of any person to the premises for the purpose of playing such games after 12:30 a. m., and prohibits anyone playing the game after one a. m., the penalty for violation being $50.

Section 7 repeals former legislation, and section 8 declares the ordinance an emergency measure, the emergency being the necessity of providing proper regulation of games of skill.

Very clearly the ordinance attempts to authorize the licensing and operation of any machine designed, con-

structed, or intended to be operated by the slightest degree of skill, that necessitates the insertion of a slug or coin before it can be put in operation, and further authorizes the licensing and operation of any machine similar thereto. In other words, the degree of skill required in the operation of the machines may be negligible as compared with the degree of chance set in motion by the insertion of a coin or slug.

In construing the language of the ordinance, no court will be so blind as to fail to see that the potentiality and design of the machines are such that they may be easily put to unlawful use, even though manufactured and intended for lawful operation. The prohibition of such machanism need not be postponed until the machines are actually put to unlawful use. *Kraus* v. *City of Cleveland,* 135 Ohio St., 43, 19 N. E. (2d), 159; *Myers* v. *City of Cincinnati,* 128 Ohio St., 235, 190 N. E., 569.

It is observed that there is no language in the ordinance providing a penalty for the possession or operation of the licensed machine for the purpose of gambling upon the result of the so-called games of skill; nor is there anything in the ordinance prohibiting the use of the licensed machines for gambling purposes, although the potentiality of such machines for that purpose is plainly apparent—so plainly apparent, in fact, as to indicate that such use was expected if not actually intended. Overwhelming confirmation of such expectation and intention is shown by the evidence introduced upon the trial of this case in the lower court, which evidence we hold was entirely competent for the purpose of enabling the court to give proper construction to the language contained in the ordinance. Practically every witness testified that the machines licensed under the ordinance are, or were prior to this action, operated as gambling devices, without molestation or hindrance by the police officers of the city, and with the apparent sanction and approval of the officials

of the city charged by law with the duty of suppressing gambling within the city. The evidence clearly and unmistakably shows that as a matter of common knowledge the licensed machines were being so kept and used for gambling purposes, whereby such persons as were attracted thereto by the gambling instinct lost money to an extent which may reasonably be estimated at more than $100,000, to the profit of those unlawfully keeping the machines for such gambling purposes and with a corresponding benefit to the city from license fees of but $13,000.

Licenses were issued for machines without limit to any person, natural or artificial, who applied and paid the license fee, in many instances the license being issued to persons with fictitious names without any information or investigation as to the character of the machines licensed, of the persons to whom licenses were being issued, the places where the machines were to be exhibited or operated, or any other information which might have been useful in regulating the operation thereof; all of which answers the argument of counsel for the city to the effect that certain other ordinances of the city, set up in its answer, prohibit the use of the machines or contrivances for gambling purposes, under pain of criminal prosecution.

It is quite clear that the ordinance in question here was adopted by the legislative body of the city for the express purpose of licensing the operation of the machines, the potentiality and design of which make them as capable of use as gambling devices as are any of the machines described in ordinances Nos. 35324 and 37387, set up in the answer of the city. It would not reason- ably be expected that the city would criminally prosecute its licensees for making any use of the licensed machines of which they are potentially capable.

Our Supreme Court in *Stevens* v. *Times Star,* 72 Ohio St., 112, at 152, 73 N. E., 1058, has stated:

"All highly civilized peoples recognize the evils to society arising from the encouragement of the gambling spirit, and it is for the purpose of discouraging this vice and preventing the spread of it, that laws are passed * * * to punish and prohibit. Such laws are and should be interpreted and enforced by our courts in a way calculated to secure the object sought."

It has not been shown by the city that there has been any regulation of the so-called machines for the playing of games of skill within the city. Indeed, it has been orally stated to the court, by counsel for the city, that the real purpose of the ordinance is a revenue-producing measure, of which revenue the city is in dire need. Thus it is seen that the ordinance is not only in conflict with the Constitution of Ohio and general laws of the state prohibiting gambling, but is an attempt to obtain funds for the general revenue of the city in a manner prohibited by law.

It appearing from the ordinance itself as well as from the evidence that the ordinance, in fact, licenses machines to be used for gambling purposes, it follows that the trial court was not in error in restraining the operation thereof and declaring the ordinance null and void.

This court having examined and considered all of the errors assigned by respondent and finding no error prejudicial to the rights of the city, it is ordered that the judgment of the Court of Common Pleas be, and the same is, affirmed.

*Judgment affirmed.*

NICHOLS, P. J., CARTER and PHILLIPS, JJ., concur.