CITY OF MISHAWAKA, INDIANA *v*. THOMAS J. STEWART.

[No. 474S90. Filed April 30, 1974.]

*R. Wyatt Mick, Jr.,* of Mishawaka, for appellant.

*Myron J. Hack,* of South Bend, for appellee.

PRENTICE, J.—This case is before us on a petition to transfer from the Court of Appeals, District Three, the decision and opinion of that Court having been filed on January 31, 1973 and reported at 291 N. E. 2d 900. Rehearing was denied March 22, 1973.

Although more issues were formed and responded to in the Court of Appeals, only two are pertinent to our determination.

I. Must a litigant proceeding under Acts of 1905, ch. 129, § 160, as amended by Acts of 1933, ch. 86, § 1, Acts of 1935, ch. 282, § 1 and by Acts of 1971 P. L. 252, § 1, the same being IC 18-1-11-3 and 1973 Supp. to the 1963 Repl. Burns Ind. Stat. Ann. § 48-6105, file a petition for rehearing within ten days of the decision of the trial court as a prerequisite to perfecting an appeal to the Court of Appeals?

II. Were the "due process" rights of the petitioner, as guaranteed by the Fourteenth Amendment to the Constitution of the United States and by Article I, Section 12 of the Constitution of Indiana, violated by virtue of the City Attorney, in his capacity as a member of the Board of Public Works and Safety, participating as a voting member thereof in determining the disciplinary issue before it, while also presenting the case against the petitioner?

This proceeding began as a disciplinary hearing before the Board of Public Works and Safety of the City of Mishawaka, hereinafter referred to as "the board," to determine charges of misconduct against Stewart, hereinafter called "the petitioner," pursuant to the statute above cited and hereinafter referred to as § 48-6105. The petitioner was found guilty of insubordination and was reduced from the rank of captain to private in the Fire Department of the city. He was further found guilty of conduct unbecoming an officer

and misconduct in the violation of fire department rules, in that he knowingly received stolen property. For this offense, the petitioner was dismissed from the fire department.

From the aforesaid decision of the board, the petitioner sought and obtained a judicial review by the Circuit Court, as to the count of misconduct. The matter was presented to the Circuit Court solely upon the basis of a written transcript of the hearing before the board, and that court determined, inter alia, that the board was without a quorum at the time of the hearing and therefore not legally constituted. Accordingly, it vacated the dismissal order of the board and ordered the petitioner reinstated. Respondent (City of Mishawaka) filed a motion to correct errors without first filing a petition for rehearing as provided by § 48-6105. Following the overruling of the motion to correct errors by the Circuit Court, the respondent perfected this appeal to the Court of Appeals, Third District, which reversed the Circuit Court.

Following the filing of a petition for rehearing and a denial thereof by the Court of Appeals, the petitioner timely filed a procedurally correct petition to transfer to this Court. The said petition to transfer is now granted. The aforesaid decision of the Court of Appeals is hereby vacated, and the judgment of the trial court is now affirmed.

\* \* \*

ISSUE I. Upon this issue, we adopt the opinion of the Court of Appeals as written by Judge Sharp, as follows:

"\* \* \* It is the contention of Stewart that the Board must file a petition for rehearing within ten days of the decision of the trial court as a prerequisite to perfecting an appeal to this court.

"In the instant case, the Board filed a Motion to Correct Errors within the prescribed time limit, but did not file a petition for rehearing. The issue is whether the Indiana Rules of Procedure have superseded the statutory provisions of § 48-6105 to the extent that a motion to correct errors rather than a petition for rehearing is the proper method for perfecting an appeal from a decision of a trial court reviewing Board action.

"The pertinent parts of § 48-6105 read as follows:

'Either party to such appeal may file, within ten [10] days after such decision, a petition for a rehearing and the judgment of the court shall be stayed pending the decision thereon. The final judgment of the court shall be binding upon all parties and no further appeal therefrom shall be allowed.

'* * *

'The provisions of the civil code shall govern in all matters of procedure upon such appeal that are not otherwise provided for by this section; but such appeal and the proceedings thereof shall not constitute a civil action, as designated by the civil code.'

"The statute provides that no appeal will be permitted beyond the Circuit Court level and, in lieu of such an appeal, provides for a petition for rehearing before the trial court. Our Supreme Court, however, has specifically held that an appeal to the Supreme or Appeals Court is permissible. City of Elkhart v. Minser, 211 Ind. 20, 5 N. E. 2d 501 (1937).

"While there was considerable controversy and confusion as to the proper method to perfect such an appeal prior to the adoption of the Indiana Rules of Procedure, we believe that said rules have settled the question.

"Numerous cases have held that proceedings for judicial review of decisions of Board of Public Works and Safety concerning dismissals of policemen or firemen are 'in the nature of civil proceedings.' Ely v. City of Montpelier, supra; City of Fort Wayne v. Bishop, 228 Ind. 304, 92 N. E. 2d 544 (1950).

"Trial Rule 1, Indiana Rules of Procedure, IC 1971, 34-5-1-1 [sic], provides:

'Except as otherwise provided, these rules govern the procedure and practice in all courts of the state of Indiana in all suits of a civil nature whether cognizable as cases at law, in equity, or of statutory origin. They shall be construed to secure the just, speedy and inexpensive determination of every action.

"It will be noted that the rules apply to 'all suits of a civil nature,' while the proceeding in this case is 'in the nature of a civil proceeding'. Although the wording is not identical, the meaning is synonymous. Also, since the statute did not contemplate an appeal beyond the circuit court level, it failed to provide for any procedure for such an eventuality. There being no

procedural guidelines provided in the statute for an appeal from the proceeding which is of a civil nature, the procedure is governed by the Indiana Rules of Procedure.

"Trial Rule 59 (G) provides that:

'In all cases in which a motion to correct errors is the appropriate procedure preliminary to an appeal, such motion shall separately specify as grounds therefor each error relied upon however and whenever arising up to the time of filing such motion. Issues which could be raised upon a motion to correct errors may be considered upon appeal only when included in the motion to correct errors filed with the trial court. A motion to correct errors shall not be required in the case of appeals from interlocutory orders, orders appointing or refusing to appoint a receiver, and from orders in proceedings supplemental to execution.'

"The filing of a motion to correct errors with trial court is a condition precedent to perfecting an appeal from a final judgment. Lows v. Warfield, Ind. App., 259 N. E. 2d 107 (1970) ; Bradburn v. County Department of Public Welfare of St. Joseph County, Ind. App., 266 N. E. 2d 805 (1971). Therefore, the Board followed the correct procedure in filing a motion to correct errors with the tial court in the instant case.

"The question now becomes whether the necessity of a Motion to Correct Errors obviates the need for a Petition for Rehearing as contemplated by § 48-6105, or whether both are required before the appeal is properly perfected. The Petition for Rehearing is not required by the Indiana Rules of Procedure. As was pointed out earlier, the petition for rehearing was originally intended to be in lieu of an appeal from the decision of the trial court. Since an appeal is now permitted and, further, since the procedure for such an appeal is governed by the Indiana Rules of Procedure, the Petition for Rehearing serves no useful purpose and should not be considered a condition precedent to the perfection of an appeal. We hold that the Indiana Rules of Procedure requiring the filing of a motion to correct errors has superseded the requirement of § 48-6105 for the filing of a petition for rehearing."

ISSUE II. There is no dispute but that the petitioner had tenure during good behavior under the statute. *State ex rel. Felthoff* v. *Richards* (1932), 203 Ind. 637, 180 N. E. 596.

Nor is it disputed that such an interest is protected by the due process provisions of both our state and federal constitutions.

Although holding that the respondent had no such interest, the United States Supreme Court in *Board of Regents* v. *Roth* (1972), 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548, said that protected interests are those that a person has already acquired in specific benefits and referred to them as property interests that may take many forms. This Court has heretofore held that the tenure rights of policemen and firemen are legally protected rights that the courts will safeguard as carefully as if they were legally protected contract or property rights. *State ex rel. Felthoff* v. *Richards, supra.*

The problem before us then is: What are the due process requirements attendant to the deprivation of the petitioner's right to continue in his employment? The statute, § 48-6105, provides that he may be removed for cause after an opportunity for a hearing. A hearing was had and cause was therein established. But did the hearing comport with due process requirements? We have previously said that the purpose of giving the board authority to discharge such employees is to protect the public interest but that the purpose of the hearing is to protect the accused employee and that formal procedure is required, not to foreclose judicial review, but as a protection to the one charged. *State ex rel. Felthoff* v. *Richards, supra.*

We acknowledge that the proceedings before administrative bodies are not required to be conducted with all of the procedural safeguards afforded by judicial proceedings, even when such proceedings are judicial in nature. We accept a lower standard in proceedings before quasi-judicial bodies because it would be unworkable to do otherwise. There are, nevertheless, standards below which we should not go. These standards, logically, should be at the highest level that is workable under the circumstances. "The

formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Boddie* v. *Connecticut* (1971), 401 U.S. 371, 378, 91 S. Ct. 780, 28 L. Ed. 2d 113.

Although the statute recites that the appeal shall be heard by the court *de novo*, this is not literally true. This has been held to mean, not that the issues at the hearing before the board are heard and determined anew, but rather that new issues are formed and determined.

"* * * a review or appeal to the courts from an administrative order or decision is limited to a consideration of whether or not the order was made in conformity with proper legal procedure, is based upon substantial evidence, and does not violate any constitional, statutory, or legal principle. * * *." *State ex rel. Public Service Commission* v. *Boone Circuit Court, etc.* (1956), 236 Ind. 202, 211, 138 N. E. 2d 4.

Insofar as the findings of fact by an administrative board are concerned, the reviewing court is bound by them, if they are supported by the evidence. It may not substitute its judgment for that of the board. *Kinzel* v. *Rettinger* (1972), 151 Ind. App. 119, 277 N. E. 2d 913. With the authority of the reviewing court so limited, it is imperative that a strict test of impartiality be applied to the fact finding procedure. The evidence will be heard and the facts determined but once. If the facts are to be fairly determined then it must occur at this stage of the proceedings. It is essential that the fact finders comport to due process standards. It also follows that the fact finding process should be free of suspicion or appearance of impropriety.

The Board of Public Works and Safety of the respondent city was, at the time of the hearing, composed of the city controller and the city attorney. By statute, the city civil engineer would also be a member of such board (Burns §48-1215, IC 18-2-1-4.2), but the city was then without an

engineer, and the board was functioning with only two members, which did constitute a quorum.

The city attorney is required by statute to be the legal adviser of all the city's departments and officers. He is required to conduct all legal proceedings authorized by the act establishing the office, including those necessary or advisable for the protection or enforcement of the rights of the city or of the public. Burns § 48-1801, IC 18-1-6-13. The city attorney, in such capacity represented the complaining party, the City Fire Department, acting through its chief.

Although denominated a "hearing," by statute such proceedings in essence are trials. They are adversary proceedings, and the city attorney is the advocate for the interests opposing the employee under charges. In this case, the city attorney framed the charges, subpoenaed the witnesses, conducted the cross-examination, and consulted with and heard the recommendation of the fire chief. Of this we have no criticism. He was functioning properly and effectively as the fire department's advocate.

While so engaged as advocate, the city attorney, not as an advocate but as a member of the hearing tribunal, also served as the presiding officer, ruled on matters of procedure and evidence and ultimately voted upon the issue of guilt. It strains the imagination that, under such circumstances, hearings will likely be conducted with that degree of impartiality and that decisions will be made with that degree of objectivity reasonably obtainable.

The city attorney, under the circumstances of this case, by separate acts of the Legislature was placed in a position that cannot be countenanced. Having served as advocate for one of two opposing parties in an adversary proceeding involving a constitutionally protected interest, the city attorney cannot be permitted to participate in the determination of the factual issues there formed and contested and subject to such a limited review.

We make this determination, notwithstanding the legislative dictates to the contrary, and we hold that the Board of Public Works and Safety was without a quorum when the action complained of was taken.

Although not specifically in point, our viewpoint here expressed finds support in the following cases.

In *Morrissey* v. *Brewer* (1972), 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484, it was held that minimum due process requirements in revoking paroles included a neutral and detached hearing body.

In *Richardson* v. *Perales* (1971), 402 U.S. 389, 410, 91 S. Ct. 1420, 28 L. Ed. 2d 842, the court rejected the suggestion of the "advocate-judge-multiple-hat" foreclosing the probability of a proper hearing saying "it assumed too much and would bring down two many procedures designed and working well." However, in that case, the hearing examiner although charged with developing the facts, did not act as counsel. The court said, *"The matter comes down to the question of the procedure's integrity and fundamental fairness."* (Emphasis ours).

In *Goldberg* v. *Kelly* (1970), 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287, it was held that welfare benefits could not be terminated, pending a post-termination hearing, after informal interview with a caseworker. The Supreme Court quoted from the District Court opinion: "Against the justified desire to protect public funds must be weighed the individual's overpowering need in this unique situation not to be wrongfully deprived of assistance. * * * While the problem of additional expense must be kept in mind, it does not justify denying a hearing meeting the ordinary standards of due process." 397 U.S. at 261. The need to make an expeditious decision and to conserve the state's funds was held not to be an overriding governmental interest in the welfare context. In conclusion, the court stated that although some prior involvement in some aspect of the case would not necessarily

bar a welfare official from acting as a decision maker, he should not have participated in making the decision there under review.

In *Gardner* v. *Repasky* (1969), 434 Pa. 126, 252 A. 2d 704, the Supreme Court of Pennsylvania reversed an order of employment suspension by the Civil Service Commission and assigned, among other grounds, the position of conflict occupied by a member of the board that lodged the complaint and also served as a member of the commission that heard the appeal. That court said that a man could not sit as a judge when he is a member of the board which brought the accusations and, citing *Commonwealth Coatings Corp.* v. *Continental Casualty* (1968), 393 U.S. 145, 89 S. Ct. 337, 21 L. Ed. 2d 301, continued "* * * *Any tribunal permitted by law to try cases and controversies must not only be unbiased but must avoid even the appearance of bias.*" (Emphasis ours).

In *Sengstacken* v. *McAlevey* (1972), 39 A. D. 2d 965, 333 N. Y. S. 2d 834, 835, the appellant division of the Supreme Court of New York set aside a determination discharging a building inspector because of the denial of due process in that the hearing officer who presided at the hearings made recommendations which were adopted by the town board and also cast the deciding vote.

In both *Gardner* v. *Repasky, supra,* and *Sengstacken* v. *McAlevey, supra,* the courts attached considerable importance to the decisive votes having been cast by the persons who had or appeared to have had a conflicting interest. In the case before us, this viewpoint would be even more significant because without the city attorney, the board was without a quorum. However, it is our opinion that the appearance of bias arising from the duality in this case overshadows the actualities, whatever they may be, to such extent as to invalidate the proceedings. In *Cinderella Career and Finishing Schools, Inc.* v. *F. T. C.* (D. C. Cir. 1970), 425 F. 2d 583, 592, the Court of Appeals for the D. C. Circuit stated,

"Litigants are entitled to an impartial tribunal whether it consists of one man or twenty and there is no way which we know of whereby the influence of one upon the others can be quantitatively measured." In this same vein, it was said in *American Cyanamid Company* v. *F. T. C.* (6th Cir. 1966), 363 F. 2d 757, "The result of the participation of Chairman Dixon in the decision of the commission is not altered by the fact that his vote was not necessary for a majority."

We agree that some prior involvement in a case should not render one per se ineligible to participate in the decision making, but the complaining party or agency in an adversary proceeding should not be permitted to do so. The nexus between a party, whether an individual or a governmental agency, and his attorney is so binding as to make them indistinguishable.

In *Guido* v. *City of Marion* (1972), 151 Ind. App. 435, 280 N. E. 2d 81 our Court of Appeals understandably followed a different line of authority and concluded that the participation of the assistant city attorney in proceedings identical to those being reviewed today did not violate the accused's due process rights. The court there said, "As stated, the Assistant City Attorney should not have been present at the hearing to persuade the Board as to Guido's innocence or guilt for that was not an issue for determination. The only issue for determination was to ascertain the facts concerning the fitness of Guido to serve as a police officer." 280 N. E. 2d at 86. We cannot accept this distinction, because a determination of Guido's guilt or innocence ipso facto determined his fitness to serve. Nor do we think the basic problem was solved in Guido's case by the injection of the assistant city attorney as counsel, while the city attorney proceeded to participate in the determination.

We believe that the countervailing interests in granting adversary hearings that are not only free of impropriety but also give the appearance of being free of impropriety,

outweigh the legislatively conceived and understandable interests in the convenience and economy of requiring city attorneys to function in the dual capacity, as the city attorney was required to do in this case.

Our decision today is also consistent with and supportive of Canon 9 of the Code of Professional Responsibility, which mandates members of the bar of this state to avoid even the appearance of impropriety.

The trial court is affirmed.

DeBruler and Hunter, JJ., concur; Arterburn, C.J., dissents with opinion in which Givan, J., concurs.

## DISSENTING OPINION

ARTERBURN, C.J.—I can not agree with the majority opinion. In this case the Appellant was an employee of the Fire Department of the City of Mishawaka, which Department was under the direction and management of the Board of Public Works and Safety of the City. It seems that the Chief of the Fire Department brought charges against the Appellant for misconduct. The charges included a charge of receiving stolen property. In accordance with the statute, a hearing was held before the Board of Public Works and Safety. The Board found the Appellant guilty, and he was dismissed from the fire department. He appealed to the Circuit Court which reversed the action of the Board, apparently on the ground that since the City Attorney was a member of the Board of Public Works and Safety, and apparently prepared the charges, presented the evidence and cross-examined the witnesses, he was incompetent to sit on the Board when it made its final decision. With this legal conclusion I do not agree for the reason that executive or administrative departments of government do not have to conform to the rules we use in the judicial branch. Basically, the executive department and the departmental heads have the tasks of managing their employees and operating a department. It is in the public interest that these tasks be

done efficiently. The heads of the departments as well as the Board of Public Works and Safety have a duty of management which involves keeping themselves informed by a continuous investigation of departmental operations. An executive department can not assume a role as a court. Every department head and board member should have knowledge of what is going on in the department and has a duty to inform himself about the conduct of its personnel and operation. He should have the ability to manage and control the department. This cannot be done while acting like a court.

We should remember that not all remedies lie in the judicial department. Some remedies are in the ballot box. If the voters want an entire sweep and change in administration, they have the privilege of voting for it and getting it by winning an election. The courts should not thwart the will of the people in that sphere of government.

The majority rests its due process reasoning on the concept of "fundamental fairness." However, the legislature could have authorized a department head or the Board of Public Works and Safety to discharge an employee for *any* reason. In other words, the legislature could have provided for a discharge for a cause (for example, mode of dress) which many people would consider even more "fundamentally unfair" than the *procedure* actually adopted by the legislature and followed in the instant case. Since the legislature may do the greater affront to "fundamental fairness" it may surely do the lesser transgression; that is, provide that a person can only be discharged for a specified cause found by the Board of Public Works and Safety, constituted as in the case before us. I think the fact that the members of the Board of Public Works and Safety had made private investigations, or that other matters came to them which they felt should be investigated in the administration of the fire department does not disqualify them from acting within their statutory authority in discharging an employee after a hearing where there is substantial evidence to support their

finding, even though before the hearing they may have had preconceived ideas about the merits of the matter. I do not think this city attorney showed any bias or prejudice. He was performing a function which the legislature knew he had to perform when it provided for his membership on the Board. The statute provides that on appeal the decision of the Board is to be deemed *"prima facie* correct" and this presumption should be interpreted to include procedural due process. The evidence before the Board supported its finding that Appellant had received stolen property. The trial court had no right to override this finding. Additionally, I fail to find any prejudice exhibited by the city attorney. He is accused of bringing out the facts—which is precisely his statutory duty.

Following my principle a little further, I think that the legislature could have provided that a Chief of a fire department has the authority to discharge a member of the fire department for cause after a hearing and that such discharge could take place even though the Fire Chief saw the offense for which the member was discharged. The Chief would not have to be disqualified from hearing the matter further, but could make the discharge order. I feel that to hold otherwise would hamper the efficient operation of the executive department of government. We should not try to make little courts out of administrative departments, Boards or Commissions that have as their duty the proper operation of the executive branch of government. The running of a modern city is akin to the operation of a business, and you can not efficiently run a business by holding a court trial or a procedurally pure hearing before you give a routine order which is to affect someone.

Givan, J., concurs.

NOTE.—Reported in 310 N. E. 2d 65.