James HIGHBAUGH, Plaintiff-Appellant,

v.

The CONSOLIDATED CITY OF INDIANAPOLIS, Defendant-Appellee.

No. 1–181S32.

Court of Appeals of Indiana,
First District.

Nov. 9, 1982.

Circuit Court of a disciplinary action brought by the Merit Board of the Indianapolis Police Department that resulted in his discharge.

We affirm.

## STATEMENT OF THE FACTS

The facts as found by the trial court and as appear from the record of the Merit Board proceedings are essentially as follows. On May 23, 1979, shortly after Highbaugh was apprised that he had been placed on a six-month suspension as a result of disciplinary proceedings, Highbaugh encountered in the Indianapolis Police Department headquarters a reporter for the Indianapolis Star, Patrick Morrison. Highbaugh conversed with Morrison and during the course of this conversation related to the reporter that he stood by his earlier contention than an innocent man had recently been convicted of murder, and that another individual, whom he identified, was actually responsible for the murder. At that time, a new trial had been ordered for the man previously convicted, and was pending.[1] Highbaugh referred to Chief of Police Eugene Gallagher and Deputy Chief Jack Cottey as "racist, gutless men," and, further, attributed his suspension to pressure from Deputy Chief Cottey, with whom he had had personal conflicts in the past. Morrison wrote a story relating the substance of Highbaugh's remarks that was subsequently published in the Indianapolis Star.

As a result of this incident, disciplinary proceedings[2] were conducted against Highbaugh. The disciplinary Board of Captains found Highbaugh to have violated several Department rules and regulations. The Chief of Police concurred with the Board of Captains and recommended to the Merit Board that Highbaugh be discharged from the Department.

William A. Hasbrook, Walter F. Lockhart, Ruckelshaus, Roland & O'Connor, Indianapolis, for plaintiff-appellant.

John P. Ryan, Richard S. Ewing, Linda M. Tienstra, City-County Legal Div., Indianapolis, for defendant-appellee.

NEAL, J.

## STATEMENT OF THE CASE

James Highbaugh (Highbaugh) appeals an unfavorable review by the Hendricks

---

1. The second trial likewise resulted in conviction.

2. This court recently discussed the statutory disciplinary procedures prescribed in Ind.Code

18-4-12-27 that were followed in the case at bar in *Grisell v. Consolidated City of Indianapolis,* (1981) Ind.App., 425 N.E.2d 247.

On September 5, 1979, a *de novo* proceeding was conducted before the Merit Board. At the outset of the hearing, in which Highbaugh was the only person to testify, Highbaugh stipulated to the truth of the facts concerning his conversation with Morrison as hereinbefore related. He testified that at the time he made the disparaging remarks he was "pretty tee'd off," having just learned at the conclusion of his shift that Chief Gallagher had ordered a six-month suspension, while the Board of Captains had recommended a suspension of only four days. Highbaugh stated that he was sorry for what he had said and that he thought Chief Gallagher was "a hell of a guy." He remained steadfast, however, in his personal belief concerning the innocence of the man convicted of murder. Additionally, Highbaugh testified concerning previous conflicts he had had with Deputy Chief Cottey.

The Merit Board found Highbaugh to have violated the following Department rules and regulations:

"Section II—Breach of Discipline

E. No member shall publicly criticize the department or any of its officer if that criticism is in any way defamatory, obscene, unlawful or tends to impair the efficient operation of the department.

&ast; &ast; &ast; &ast; &ast; &ast;

H. Officers who are on suspension are charged with the responsibility of conforming to the department's rules, policies and procedures to the same extent as if he [sic] were not on suspension.

&ast; &ast; &ast; &ast; &ast; &ast;

Section III. Insubordination

A. No member shall make public comment on the official action of a supervisory officer in a detrimental manner.

B. No member shall be insubordinate or act with disrespect to any supervising officer.

&ast; &ast; &ast; &ast; &ast; &ast;

Section IX. Failing to Cooperate or be Truthful

C. All members shall cooperate with representatives of the news media but shall not divulge confidential or personal information nor information which might jeopardize any pending criminal or administrative case. All further inquiries by the news media shall be directed to the Public Information Officer."

The Merit Board found that while the evidence was sufficient to prove a violation of Section II(H), *supra,* no punishment should be imposed therefor.

On the basis of these violations, the Merit Board ordered Highbaugh's discharge. The trial court affirmed the Merit Board's action on judicial review.

## ISSUES

Highbaugh presents two issues for review, which we rephrase as follows:

I. Whether sufficient evidence was adduced to sustain the findings of the Merit Board and the trial court's affirmance thereof; and

II. Whether the imposition of discipline under these facts constitutes an infringement upon Highbaugh's rights of freedom of speech under the First Amendment to the Constitution of the United States.

## DISCUSSION AND DECISION

*Issue I. Sufficiency of the evidence*

Highbaugh contends there was insufficient evidence to support the findings that his statements were made publicly; that they were detrimental to the highest officers of the Department, the police force, or the community at large; that they were defamatory, obscene or unlawful; or that they tended to impair the efficient operation of the Department or jeopardize a pending criminal case. Highbaugh additionally complains that there was a total failure to relate his statements to the charges against him, as he was the only person to testify at the Merit Board hearing.

We initially comment upon our standard of judicial review in cases of this nature. Ind.Code 18–4–12–27(h), prescribing the procedures by which an aggrieved officer may secure judicial review of Merit Board action, stated in part:

"The [reviewing] court, without jury, shall review the record and render its decision as in other administrative reviews."

In *State ex rel. Public Service Commission v. Boone Circuit Court,* (1956) 236 Ind. 202, 211, 138 N.E.2d 4, the court stated:

"[A] review or appeal to the courts from an administrative order or decision is limited to a consideration of whether or not the order was made in conformity with proper legal procedure, is based upon substantial evidence, and does not violate any constitutional, statutory, or legal principle."

Cited in *City of Mishawaka v. Stewart,* (1974) 261 Ind. 670, 677, 310 N.E.2d 65, where it is further observed:

"Insofar as the findings of fact by an administrative board are concerned, the reviewing court is bound by them, if they are supported by the evidence. It may not substitute its judgment for that of the board. *Kinzel v. Rettinger* (1972), 151 Ind.App. 119, 277 N.E.2d 913."

We have examined the evidence adduced before the Merit Board, including those facts that were stipulated, and are satisfied there was substantial evidence before the Merit Board to support its findings and decision. We cannot say as to any particular finding that the evidence admits of but one conclusion and that the opposite conclusion was reached. It is clearly not unreasonable to infer that the public characterization of the Chief of Police and the Deputy Chief as "racist, gutless men" is detrimental to those officers, their subordinates, and the Department as a whole, or that such public comment would tend to impair the efficient operation of the Department. Neither is it unreasonable to infer that Highbaugh's actions in relating to the reporter his personal opinion regarding the murder case, in which a new trial had been ordered but had not as yet commenced, might jeopardize that pending case. Although Highbaugh baldly asserts his comments were not made publicly, he neither develops a cogent argument nor cites authority in support thereof; nevertheless we think there is no question but that these were public utterances.

It has been observed that the discipline of police officers is an executive, and not a judicial, function. *City of Gary v. Gause,* (1974) 162 Ind.App. 97, 317 N.E.2d 887. We find there was sufficient evidence to support the findings of the Merit Board and that the Merit Board was acting within the scope of its authority in determining there was sufficient evidence of misconduct on the part of Highbaugh to warrant his discharge. Although reasonable persons might disagree as to whether that decision was appropriate, neither the trial court nor this court may substitute its judgment for that of the Merit Board.

*Issue II. Constitutionally protected speech*

◼ Highbaugh contends that his statements to the reporter were protected by the First Amendment, relying upon *Pickering v. Board of Education of Township High School District 205, Will County,* (1968) 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811. While we agree that *Pickering* provides the appropriate analytical framework for the resolution of this issue, we do not agree that *Pickering* compels the result urged by Highbaugh.

The issue in *Pickering* was whether a public school teacher could, consonant with First and Fourteenth Amendment protections, be dismissed for causing to be published in a newspaper a letter critical of his superintendent and school board, despite an administrative determination to the effect that the publication of the letter was "detrimental to the efficient operation and administration of the schools of the district." In particular, the teacher criticized the past performance of the board's handling of a past bond issue and its subsequent allocation of monies between academic and athletic programs.

The Court began its analysis by recognizing that public school teachers may not be forced, as a condition of their employment, "to relinquish the First Amendment rights they would otherwise enjoy as citizens to comment on matters of public interest in connection with the operation of the public schools in which they work." 391 U.S. at 568, 88 S.Ct. at 1734. The Court went on to say, however:

"At the same time it cannot be gainsaid that the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general. The problem in any case is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."

391 U.S. at 568, 88 S.Ct. at 1734. The Court refused to formulate a general standard to be used in the administration of the balancing test, recognizing the "enormous variety" of factual situations in which the conflict will inevitably arise. Certain guides for analysis are indicated, however, which the Court illustrates by pointing out elements not present in that case. These include: (1) Pickering's employment relationships with the school system's administration are not the kind of close relationships for which it can persuasively be claimed that personal loyalty and confidence are necessary to their proper functioning; and (2) Pickering's letter did not damage the professional reputation of the Board of Education and did not foment controversy and conflict among Pickering's co-workers. 391 U.S. at 569–571, 88 S.Ct. at 1735–1736. The court further pointed out that Pickering's statements, however erroneous, were not shown and could not be presumed to have impeded upon his daily performance in the classroom or to have interfered with the regular operation of the schools generally. And, the fact of employment was seen to be only tangentially and insubstantially involved in the subject matter of the public communication.

In contrast, the situation presented by the case at bar differs from that in *Pickering* in each respect just noted. A great degree of loyalty and confidence must exist between a police officer and his superior officers for a police department to properly function, no matter the degrees of rank that separate them, and no matter the lack of day-to-day contact in the course of performing their respective duties. In *Kannisto v. City and County of San Francisco,* (9th Cir.1976) 541 F.2d 841, 844, the court stated:

"We reemphasize our belief that police department regulations, while perhaps not directly analogous to those of the military service, are entitled to considerable deference because of the state's substantial interest in creating and maintaining an efficient organization to carry out the important duties assigned by law."

Also in contrast to *Pickering* is the nature of the public communication that precipitated the dismissal in the case at bar. Highbaugh's characterization, admittedly unfounded, of Chief Gallagher and Deputy Chief Cottey as "racist, gutless men" would clearly tend to harm the professional reputation of both men and would clearly tend to foment controversy and conflict among Highbaugh's co-workers. We may take judicial notice that the police department of a large metropolitan area such as Indianapolis, where this court sits, will employ an appreciable number of minority employees; as importantly, such a city will be the home of an appreciable number of minority residents. The important functions of a police department are clearly not fostered, and are indeed impaired, by groundless public assertions that would tend to erode the confidence that a considerable segment of a population has in its police department. And, while the fact of employment was seen to be tangential in *Pickering,* it is central in the instant case. Highbaugh's diatribe, precipitated by his receiving the suspension, was clearly in reaction to an unfavorable development in his personal employment relationship with the Department, as opposed to a constitutionally pro-

tected statement on an issue of public importance.

We would note that by no means do we consider that Highbaugh's statements do not relate to matters of public importance, as it is clearly in the public interest to expose corruption and other evils when they infest the highest levels of our public agencies. Indeed, it is the office of the First Amendment to protect those interests. Thus, had Highbaugh's statements been uttered in good faith and upon due deliberation, and had they been reasonably founded, a different result might obtain. However, by Highbaugh's own admission, he made the disparaging statements in the heat of anger, and they were totally without foundation. In short, these statements were made recklessly. As the Supreme Court concluded in *Pickering,*

> "In sum, we hold that, in a case such as this, absent proof of false statements knowingly or recklessly made by him, a teacher's exercise of his right to speak on issues of public importance may not furnish the basis for his dismissal from public employment." (Footnote omitted.)

391 U.S. at 574, 88 S.Ct. at 1737.

The trial court found that *Byrd v. Gain,* (9th Cir.1977) 558 F.2d 553, *cert. denied* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 is controlling in this case. Although that was an action by plaintiffs-police officers under 42 U.S.C. § 1983, and is not precisely on point, we endorse the following distinction noted by the court:

> "Substantial differences between the public interest in education and the public interest in safety and order justify a difference in the standards by which the respective institutions may protect themselves from attempted destruction by their employees."

558 F.2d at 554.

We hold that a police officer's discharge may be justified by a proper finding that the statement at issue adversely affected his efficiency as a police officer or the efficiency of the department as a police force. *See Tygrett v. Barry,* (D.C.Cir.1980) 627 F.2d 1279, 1281. In the case at bar, it was admitted that Highbaugh uttered the statements attributed to him. The Merit Board found that his public criticism of the Department and its highest ranking officers tended to impair the efficient operation of the Department, and that his statements regarding the murder case tended to jeopardize that pending case. Therefore, Highbaugh's discharge was justified.

Affirmed.

RATLIFF, P.J., and ROBERTSON, J., concur.