## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of establishing
the defense of res judicata, collateral
estoppel, or the law of the case.



ATTORNEYS FOR APPELLANT

John F. Kautzman
Edward J. Merchant
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Jim Brugh
Logansport, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Shawn Durham,

*Appellant-Plaintiff,*

v.

Town of Galveston, Indiana

*Appellee-Defendant*

November 6, 2017

Court of Appeals Case No.
09A04-1706-MI-1322

Appeal from the Cass Superior
Court

The Honorable Richard A.
Maughmer, Judge

Trial Court Cause No.
09D02-1609-MI-48

**Altice, Judge.**

### Case Summary

[1]     Following a disciplinary hearing, the Galveston Town Board (the Board), by a

3-2 vote, found that Shawn Durham committed eight of nine counts of

insubordination and misconduct, and, as a result, terminated Durham's employment as Town Marshall. Durham sought judicial review of the Board's decision, arguing that the procedure employed by the Board violated his due process rights and that the evidence was insufficient to support the Board's findings that he committed acts that amounted to insubordination and misconduct. The trial court rejected Durham's arguments and affirmed the Board's decision. On appeal, Durham argues only that the procedure employed by the Board violated his due process rights.

[2] We affirm.

**Facts & Procedural History**

[3] The Board, composed of five members, is the legislative body of the Town of Galveston and also operates as the safety board for police department purposes. *See* Ind. Code § 36-8-3-4(a). In 2012, the Board appointed Durham as Town Marshal. *See* Ind. Code § 36-5-7-2 ("[t]he town legislative body shall appoint a town marshal"). In that capacity, Durham served at the pleasure of the Board. *See* I.C. § 36-5-7-3. The Board had legal authority to discipline Durham by dismissal upon determining that he was guilty of a violation of rules, neglect or disobedience of orders, conduct unbecoming an officer, or another breach of discipline. *See* I.C. § 36-8-3-4(b)(B), (C), (H), (I).

[4] On or about July 26, 2016, the Board passed, by a 3-2 vote, Resolution No. 2016-02 in which the Board terminated Durham from his position as Town Marshal. On July 28, 2016, Durham filed a motion to set aside his termination

on grounds that he was entitled to a hearing before his dismissal. *See* I.C. § 36-5-7-3 ("before terminating or suspending a marshal who has been employed by the town for more than six (6) months after completing the minimum basic training requirements . . . the legislative body must conduct the disciplinary removal and appeals procedure prescribed by IC 36-8," which includes written notice of disciplinary charges and notice of right to a hearing).

On or about August 1, 2016, the Board acknowledged its error and passed Resolution No. 2016-03 in which it rescinded Durham's termination and set out in writing nine disciplinary charges against Durham. The two board members who opposed Resolution No. 2016-02 recused themselves from the vote on Resolution No. 2016-03.

In chronological order, the events underlying the nine charges of misconduct and insubordination presented against Durham are as follows. In Count VII, it was alleged that on May 2, 2016, Durham surreptitiously recorded his conversation with board members John Hart and James Jackson and later released that information, out of context, at the Board's June 2, 2016 meeting. Count VIII alleged that at the June 2 board meeting, Durham committed misconduct when he used profane language in the presence of the public and that such conduct amounted to insubordination as to board member Jackson specifically.

In Counts I through IV, it was alleged that Durham was guilty of insubordination when, on June 6, 2016, he refused to comply with Hart's

demands that he give the Board the keys to the police department building and vehicles, passwords to police department computers, and the code to the police department camera system.

[8] In Count V, it was alleged that on June 8, 2016, Hart requested access to recordings from the police department's surveillance system in relation to possible misuse or abuse of town property and that Durham was guilty of insubordination because he refused to grant Hart access. Also on June 8, Durham conducted a meeting of reserve officers at the Town's police department despite being directed by the Board in February 2016 to discontinue use of reserve officers. Durham had also previously engaged a reserve officer to accompany him in the Town's police vehicle to perform police functions on or about March 20, 2016, despite the Board's February directive. Based on these events, Durham was charged with insubordination under Count VI. Finally, in Count IX, it was alleged that Durham committed misconduct by appearing on and providing misleading information to the public through a local media outlet.

[9] Durham timely requested a hearing on the disciplinary charges. Prior to the hearing, Durham, by counsel, filed a motion for recusal with the Board seeking to disqualify Hart and Jackson from serving as voting members of the Board because either Hart or Jackson were specifically named in seven of the nine disciplinary charges and presumably were going to be witnesses against him. Durham argued that Hart and Jackson's involvement in the conduct giving rise to the disciplinary charges made it "impossible for [them] to sit as unbiased and

impartial triers of fact" when the matter was to be decided by the Board. *Appellant's Appendix Vol. II* at 45. The Board, by counsel, denied Durham's motion.

[10] On August 24, 2016, a disciplinary hearing was held. Durham renewed his request that Hart and Jackson be disqualified from participating as voting members of the Board. The hearing officer, however, permitted Hart and Jackson to testify against Durham and sit as part of the Board in deciding the matter. After the hearing, the Board issued findings of fact and conclusions of law as Resolution No. 2016-04. By a 3-2 vote, with Hart and Jackson and one other board member voting in favor, Durham was found guilty of eight of the nine charges[1] of misconduct and insubordination and was terminated from his position as Town Marshal. *See* I.C. § 36-5-2-13 ("[t]he town executive must have the approval of a majority of the town council before the executive may discharge . . . or remove a town employee").

[11] Durham sought judicial review of the Board's action, arguing that the procedure employed by the Board, i.e., permitting Hart and Jackson to participate as voting members of the Board on the instant matter after they testified against him, violated his due process rights in that he was denied a fair and impartial hearing. Durham also argued that the evidence did not support the determination that he engaged in misconduct or insubordination. The trial

---

[1] By a 5-0 vote, the Board found Durham not guilty of the allegations contained in Count IX, which concerned Durham's comments to a local media outlet.

court affirmed the decision of the Board. Additional facts will be provided as needed.

## Discussion & Decision

Durham's sole challenge on appeal is that the Board violated his due process rights when board members Hart and Jackson were permitted to testify regarding the alleged insubordination and misconduct and then sit as voting members of the Board in deciding the instant disciplinary action.

As our Supreme Court has noted:

> Due process requires a neutral, or unbiased, adjudicatory decisionmaker. Scholars and judges consistently characterize provision of a neutral decision-maker as one of the three or four core requirements of a system of fair adjudicatory decisionmaking. . . . The problem lies in defining and applying the neutral decision-maker requirement. Some forms of bias are permissible, even desirable, in a decision-maker. Other forms of bias are impermissible.

*Rynerson v. City of Franklin*, 669 N.E.2d 964, 967 (Ind. 1996) (internal citations omitted). Nevertheless, it is "imperative that a strict test of impartiality be applied to the factfinding process. *Id*. (quoting *City of Mishawaka v. Stewart*, 261 Ind. 670, 677-78, 310 N.E.2d 65, 69 (1974)).

We acknowledge that proceedings before administrative bodies are not required to be conducted with all of the procedural safeguards afforded by judicial proceedings, even when such proceedings are judicial in nature. *Stewart*, 261

Ind. at 676, 310 N.E.2d at 68. We accept a lower standard in proceedings before quasi-judicial bodies because it would be unworkable to do otherwise. *Id*. There are, nevertheless, standards below which we should not go. *Id*. These standards, logically, should be at the highest level that is workable under the circumstances. *Id*.

[15] Durham directs us to two cases as controlling the outcome of this case: *Stewart* and *City of Hammond v. State ex rel. Jefferson*, 411 N.E.2d 152 (Ind. Ct. App. 1980). In *Stewart*, the Court held that it was a violation of due process for the city's attorney to both prosecute the disciplinary complaint against the firefighter as well as chair the board responsible for adjudicating guilt and imposing sanctions. For the Court, "the appearance of bias arising from the duality . . . overshadow[ed] the actualities . . . to such extent as to invalidate the proceedings." *Stewart*, 261 Ind. at 680, 310 N.E.2d at 70. The same result was reached in *Hammond*, wherein the court determined that it was improper for the city attorney to sit on the safety board as a decisionmaker even though an assistant city attorney prosecuted the disciplinary action. 411 N.E.2d at 154. The *Hammond* court noted that even though the city attorney did not personally assume conflicting roles, the appearance of impropriety was evident. *Id*.

[16] Durham likens Hart and Jackson's dual roles as material witnesses and decisionmakers to that of the city attorneys in *Stewart* and *Hammond*. The decisive factor in *Stewart* and *Hammond*, however, was the appearance of bias or impartiality created by the dual role of the city attorney as a *prosecutor* and decisionmaker in the same matter. This is not the case here. Hart and Jackson

were not prosecuting the action, but were merely witnesses to Durham's conduct. Indeed, the evidence in support of some of the disciplinary charges could only come from Hart or Jackson's testimony. In short, the decisions in *Stewart* and *Hammond* do not support Durham's position.

[17] We next address Durham's claim that his due process rights were violated because Hart and Jackson were unable to serve as impartial members of the Board. Durham repeatedly describes the procedure employed as being "tantamount to having a member of a jury step out of the jury box temporarily to become a member of the prosecution team, and then return to the jury box for the decision-making process." *Appellant's Brief* at 12. He maintains that it was improper for Hart and Jackson to serve in dual roles—as material witnesses and as decision-makers.

[18] Although not attorneys, Hart and Jackson did serve dual roles. A contention that the combination of investigative and administrative functions in the same individuals violated due process has to "'overcome a presumption of honesty and integrity in those serving as adjudicators.'" *Rynerson*, 669 N.E.2d at 968 (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). An inquiry into whether the combination of investigative and adjudicative functions violates due process is "subject to the presumption that the members of the board are persons of 'conscience and intellectual discipline, capable of judging the particular controversy fairly' and will act with 'honesty and integrity.'" *Id.* (quoting *Withrow*, 421 U.S. at 55). Just as a judge must act with fairness and impartiality, a tribunal must act with fairness and impartiality. *See Stewart*, 261

Ind. at 677, 310 N.E.2d at 69. In the absence of "a demonstration of actual bias," we will not interfere with the administrative process. *Ripley Cty. Bd. of Zoning Appeals v. Rumpke of Ind., Inc.*, 663 N.E.2d 198, 209 (Ind. Ct. App. 1996).

[19] To prove actual bias, a party must "establish from the [Board's] conduct actual bias or prejudice that places [him] in jeopardy." *Tharpe v. State*, 955 N.E.2d 836, 839 (Ind. Ct. App. 2011). One may not merely allege bias and prejudice against a tribunal to escape the rigors of normal administrative procedure. *New Trend Beauty Sch., Inc. v. Ind. State Bd. of Beauty Culturist Examiners*, 518 N.E.2d 1101, 1105 (Ind. Ct. App. 1988). Even if bias exists, however, "'we must presume the Board will act properly with or without recusal of the allegedly biased members.'" *Adkins v. City of Tell City*, 625 N.E.2d 1298, 1303 (Ind. Ct. App. 1993) (quoting *New Trend Beauty School, Inc. v. Ind. State Bd. Of Beauty Culturist Exam'rs*, 518 N.E.2d 1101, 1105 (Ind. Ct. App. 1988)).

[20] Here, although the trial court noted its concerns that "substantial hostility exists between four of Galveston's board members", the court did not note any evidence indicating actual bias against Durham. *Appellant's Appendix Vol. II* at 7. Contrary to Durham's claim, the fact that Hart and Jackson were witnesses to Durham's conduct and testified to such does not, in and of itself, demonstrate actual bias on their behalf. *See Adkins*, 625 N.E.2d at 1303 (noting that "prior involvement in an investigation does not automatically bias or disqualify a safety board"). Durham was afforded a hearing on the disciplinary charges against him at which he was given the opportunity to cross-examine both Hart and Jackson. There is nothing in the record that indicates actual bias

on behalf of Hart and Jackson such that recusal was necessary. Indeed, diminishing Durham's claim of bias is that, as noted above, both Hart and Jackson voted to find Durham not guilty of the misconduct alleged in Count IX. In sum, the procedure employed by the Board, i.e., permitting Hart and Jackson to testify during the disciplinary hearing and also decide the matter, did not violate Durham's due process rights.[2]

[21] Judgment affirmed.

Baker, J. and Bailey, J., concur.

---

[2] The trial court relied upon the rule of necessity in concluding that the procedure employed by the Board did not violate Durham's due process rights. Having concluded that there has been no showing of actual bias and thus, that there were no grounds upon which to disqualify Hart and Jackson, we need not address the rule of necessity.