Larry J. RYNERSON, Appellant
(Petitioner below),

v.

The CITY of FRANKLIN, Indiana,
Appellee (Respondent below).

No. 41S05–9603–CV–00209.

Supreme Court of Indiana.

Aug. 7, 1996.

John F. Kautzman, Ruckelshaus, Roland, Hasbrook & O'Connor, Indianapolis, for Appellant.

Richard S. Ewing, John D. Waller, Stewart & Irwin, Indianapolis, for Appellee.

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

We hold that the procedure in Ind. Code § 36–8–3–4, which permits a city attorney who is a member of a city public works and safety board to prosecute police and fire

discipline cases before the board so long as the attorney does not participate as a board member in any police or fire disciplinary proceedings, does not violate due process.

*Background*

Petitioner Larry J. Rynerson was a police officer with the City of Franklin Police Department. Pursuant to Indiana Code § 36–8–3–4 (1988 & 1989 Supp.), the City of Franklin Board of Public Works and Safety conducted a disciplinary hearing against petitioner on May 10, 1990, based on charges brought by the Franklin Chief of Police, William McCarty.

The board was comprised of three members: Mayor Eddy M. Teets, Loren Wilham, and James Acher, the city attorney. Acher temporarily recused himself from his position on the board to represent Chief McCarty at the hearing. The remaining members of the board concluded that petitioner was guilty on three counts of conduct unbecoming an officer and five counts of neglect of duty. The board terminated petitioner's position with the police department. It is undisputed that Acher did not participate in petitioner's disciplinary hearing as a board member and did not participate in the Board's decision to dismiss petitioner.

Petitioner filed his Verified Petition for Judicial Review and the trial court thereafter entered summary judgment against him on August 18, 1994. Petitioner appealed. The Court of Appeals reversed the trial court and held unconstitutional the statutory "procedure through which a city attorney who serves as an appointed member of the city's Board of Public Works and Safety temporarily resigns from the Board in order to prosecute a disciplinary action before that Board." *Rynerson v. City of Franklin*, 655 N.E.2d 126, 129 (1995). The Court of Appeals reasoned as follows:

> In third class cities, the city attorney is appointed by the city executive. I.C. 36–4–9–8(b)(2). And, "[t]he members of the board of public works and safety are the city executive and two (2) persons appoint-

ed by the executive." I.C. 36–4–9–8(c). Under this statute, Mayor Teets appointed Mr. Acher as both city attorney and member of the Safety Board, and that dual appointment ultimately resulted in the impropriety at issue in this appeal. It is consistent that, should the mayor not have named the city attorney to the Safety Board, the city attorney could freely serve as an advocate before the Safety Board without fear of creating the appearance of impropriety.

> As is typical in disciplinary proceedings, Rynerson's case turned upon the credibility and persuasiveness of the evidence offered by the prosecution balanced against his own testimony and rebuttal evidence. Mr. Acher was a colleague of the Safety Board and had been appointed to that post by the mayor, who was also a Safety Board member. Further, Mr. Acher planned to return to the Safety Board at the conclusion of the disciplinary proceeding and continue working with Mayor Teets and Wilham. A reasonable person could easily perceive that the Safety Board may give more credence to the arguments of Mr. Acher. This arrangement is fundamentally unfair. Where such unfairness is present, due process is violated.

*Rynerson*, 655 N.E.2d at 128–29.

The city seeks transfer. The city contends that the decision of the Court of Appeals is erroneous because: (i) the due process standard it requires the city to comply with is too high in light of previous decisions by this court and the United States Supreme Court; and (ii) the decision is based on the presumption that the voting members of the board were biased, contrary to the rule of law that courts presume that an administrative decision maker is unbiased in its functioning. Petitioner responds that the Court of Appeals correctly concluded that the city violated his due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution and Article 1, § 12, of the Indiana Constitution.[1] We granted transfer on March 11, 1996.

---

1. Although petitioner makes a general argument that the "due course of law" provision of article 1, § 12, of the Indiana Constitution has been

violated, petitioner presents no independent authority or argument to the effect that the Indiana Constitution requires different analysis of the is-

*Discussion*

## I

### A

Due process requires a neutral, or unbiased, adjudicatory decisionmaker. Scholars and judges consistently characterize provision of a neutral decision-maker as one of the three or four core requirements of a system of fair adjudicatory decisionmaking. *See, e.g., Arnett v. Kennedy,* 416 U.S. 134, 171, 94 S.Ct. 1633, 1652, 40 L.Ed.2d 15 (1974) (White, J., concurring and dissenting); Verkuil, *A Study of Informal Adjudication Procedure,* 43 U. Chi. L.Rev. 739 (1976); Friendly, *Some Kind of Hearing,* 123 U. Pa. L.Rev. 1267 (1975). The requirement dates back at least as far as seventeenth century England. In *Bonham's Case,* 8 Coke 114a, 188a, 77 Eng. Rep. 646, 652 (1610), the Court used natural law reasoning to announce the principle that no person can be a judge in his own cause. The problem lies in defining and applying the neutral decision-maker requirement. Some forms of bias are permissible, even desirable, in a decision-maker. Other forms of bias are impermissible. Kenneth C. Davis & Richard J. Pierce, Jr., *Administrative Law Treatise* § 9.8 (1994).

We had occasion to confront the due process requirement of a neutral decisionmaker in *City of Mishawaka v. Stewart,* 261 Ind. 670, 310 N.E.2d 65 (1974), where a city firefighter faced disciplinary charges before the city's public works and safety board. Concluding that it was "imperative that a strict test of impartiality be applied to the factfinding process," we found that it was improper for the Mishawaka city attorney both to prosecute the disciplinary complaint against the firefighter and chair the board responsible for adjudicating guilt and imposing sanctions. *Id.,* 261 Ind. at 677–78, 310 N.E.2d at 69. Building on this principle, the Court of Appeals has held that a fair hearing is not provided when an assistant city attorney represents the city in a hearing in which the city attorney sits as a decisionmaking member of the public works and safety board. *City of Hammond v. State ex rel. Jefferson,* 411 N.E.2d 152, 153 (Ind.Ct.App.1980). And in early 1981, the Court of Appeals reaffirmed the holding of *City of Mishawaka v. Stewart. Martincich v. City of Hammond,* 419 N.E.2d 240, 244 (Ind.Ct.App.1981).

■ Perhaps in response to the *City of Mishawaka* and two *City of Hammond* decisions, the legislature in 1981 amended the police officers and firefighters discipline statute to provide:

> If the corporation counsel or city attorney is a member of the [public works and] safety board of a city, he may not participate as a safety board member in a disciplinary hearing concerning a member of either [the police or fire] department.

1981 Ind.Acts P.L. 315 § 2, amending Ind. Code § 36–8–3–4(c). The case before us essentially asks whether this statutory arrangement achieves a sufficient separation of the prosecutorial or advocacy functions and the adjudicative functions involved in city police and fire disciplinary proceedings to meet the due process requirement of a neutral or unbiased adjudicatory decision-maker.[2] We hold that it does.

### B

The United States Supreme Court has not passed upon the issue here, which we would describe as whether it is constitutional for a member of an administrative body to serve as an advocate or prosecutor before the body in a certain type of adjudicative proceeding so long as the member does not participate in any such adjudicative proceeding. But the court has had occasion to examine the constitutionality of the combination of investigative and adjudicative functions in the hands of

---

sues in this case than the analysis required under the Due Process Clause of the Fourteenth Amendment. As such, we will treat the issues as arising under the Due Process Clause.

**2.** It is undisputed that at the time of petitioner's disciplinary hearing he was a tenured patrolman with the City of Franklin Police Department and that he had a property interest in his continued employment that was protected by the Due Process clause of the Indiana and Federal constitutions. *See City of Mishawaka v. Stewart,* 261 Ind. 670, 676, 310 N.E.2d 65, 68 (1974) (citing *State ex rel. Felthoff v. Richards,* 203 Ind. 637, 641, 180 N.E. 596, 598 (1932)).

administrative body members in *Withrow v. Larkin,* 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). In *Withrow,* a Wisconsin physician argued that the medical examining board was not an independent decisionmaker and so it would be unconstitutional for the board to rule on the merits of the same charges it investigated and presented to the district attorney. *Id.* at 46, 95 S.Ct. at 1464. The court rejected the physician's challenge. Its analysis in doing so suggests two principles helpful in resolving the case before us.

### B–1

First, the *Withrow* court said that the physician's contention that the combination of investigative and administrative functions in the same individuals violated due process had to "overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." *Id.* at 47, 95 S.Ct. at 1464. The court went on to quote an earlier opinion on this presumption, saying that "[w]ithout a showing to the contrary, state administrators 'are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.'" *Id.* at 55, 95 S.Ct. at 1468, quoting *United States v. Morgan,* 313 U.S. 409, 421, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941).

From this we conclude that our inquiry into whether the arrangement before us violates due process is subject to the presumption that the members of the board are persons of "conscience and intellectual discipline, capable of judging the particular controversy fairly" and will act with "honesty and integrity." *Withrow,* 421 U.S. at 55, 95 S.Ct. at 1468. But it is also subject to "a realistic appraisal of psychological tendencies and human weaknesses" as to whether an administrative body adjudicating a matter in which an individual who sits as a member of the board in other matters "poses such a risk of actual bias or prejudgment that the practice

must be forbidden if the guarantee of due process is to be adequately implemented." *Id.*

### B–2

Second, *Withrow* also makes clear that the inquiry into whether a particular combination of functions in the same administrative decisionmakers violates due process is a practical one:

That is not to say that there is nothing to the argument that those who have investigated should not then adjudicate. The issue is substantial, it is not new, and legislators and others concerned with the operations of administrative agencies have given much attention to whether and to what extent distinctive administrative functions should be performed by the same persons. No single answer has been reached. Indeed, the growth, variety, and complexity of the administrative processes have made any one solution highly unlikely. . . .

The incredible variety of administrative mechanisms in this country will not yield to any single organizing principle.

*Id.* at 51, 95 S.Ct. at 1466. Application of due process principles in this context is an "intensely practical matter[ ]," *Goss v. Lopez,* 419 U.S. 565, 578, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975), and the very nature of due process "negates any concept of inflexible procedures universally applicable to every imaginable situation." *Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n.,* 426 U.S. 482, 494, 96 S.Ct. 2308, 2315, 49 L.Ed.2d 1 (1976), quoting *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961).

From this we conclude that it is appropriate to take into account concerns about the practical operation of administrative agencies, including their variety, complexity, and flexibility, when analyzing whether their administrative mechanisms violate due process.

### C

Giving due consideration to the presumption of honesty and integrity described in *Withrow* and of conscientiousness, intellectu-

al discipline and fairness described in *Morgan*, our appraisal of psychological tendencies and human weakness does not lead us to the conclusion that the statutory procedure here must be forbidden to assure due process. First, while the Court of Appeals condemns the procedure because "the decisionmaker shares an alliance with the prosecutor," *Rynerson*, 655 N.E.2d at 128, we note that it is the mayor who hires the city attorney. Ind.Code § 36–4–9–8 (1996 Supp.). As such, it seems beyond dispute that to the extent there is an alliance between the mayor, who serves as the chairman of the board, and the city attorney, it is because of this employer-employee relationship, not because they serve as fellow members of the works and safety board in other than police and fire disciplinary proceedings. Yet neither the Court of Appeals nor Rynerson suggest that due process somehow prohibits the mayor from adjudicating a matter in which his subordinate is serving as prosecutor.[3]

While we acknowledge that in *City of Mishawaka v. Stewart* we said "the fact finding process should be free of suspicion or appearance of impropriety," 261 Ind. at 677, 310 N.E.2d at 69, it was in the context of holding that it was impermissible for the city attorney to both prosecute the disciplinary case against a firefighter and chair the works and safety board adjudicating guilt. We did not mean to say that the touchstone for determining due process was freedom from suspicion or appearance of impropriety and, in any event, we find the present situation free from such suspicion or appearance. After all, there is neither any suggestion that the statute was not scrupulously complied with nor that there was any actual bias or prejudice on the part of the two participating members of the board.

The Court of Appeals also concluded that the due process violation it perceived here "could easily be avoided" by simply not naming the city attorney to the works and safety board. This conclusion goes to the second principle gleaned from *Withrow* and discussed above, namely, that due process inquiries of this sort require courts to think about the practical operation of administrative agencies.

A third class city's works and safety board is responsible for an enormous amount and variety of city business. The board supervises the streets, alleys, sewers, public grounds and other property of the city and is responsible for their repair and condition. Ind. Code § 36–9–6–2 (1993). It is responsible for the custody and maintenance of all real and personal property of the city and designs, orders, contracts for and executes the construction of all buildings and other structures needed for public purposes and all work required to improve or repair any real or personal property owned or used by the city. Ind.Code § 36–9–6–3 (1993). The board has substantial condemnation, rental and purchase powers, Ind.Code § 36–9–6–4 (1993); authority to build, alter and maintain drains and sewers, Ind.Code § 36–9–6–10 (1993); and responsibility for refuse removal. Ind.Code § 36–9–6–19 (1993). Both article 8, chapter 3, and article 9, chapter 6 of title 36 of the Indiana Code set forth substantial additional powers, authority and responsibilities of works and safety boards. As can be seen from this partial list, much of this work will require the assistance of the city attorney. *See* Ind.Code § 36–4–9–12 (1993) (powers and duties of city attorney). Contrary to the conclusion of the Court of Appeals, we think that to prohibit the city attorney from serving as a member of the works and safety board would work a substantial disruption to the operations of city government. It seems to us that the legislature responded in an eminently practical way to our earlier holding in *City of Mishawaka v. Stewart* by proscribing participation by city attorneys in police and fire disciplinary proceedings while

---

**3.** In fact, *Withrow* flatly rejected this proposition: "It is also very typical for the members of administrative agencies to receive the results of investigations, to approve the filing of charges or formal complaints instituting enforcement proceedings, and then to participate in the ensuing hearings. This mode of procedure ... does not violate due process of law." 421 U.S. at 56, 95 S.Ct. at 1469 (footnote omitted). *See also Blinder, Robinson & Co. v. Securities & Exchange Comm'n*, 837 F.2d 1099, 1106 (D.C.Cir.1988), *cert. denied* 488 U.S. 869, 109 S.Ct. 177, 102 L.Ed.2d 146 (1988).

permitting city attorneys to continue to participate in the myriad of other works and safety board matters, many of which require legal expertise. Taking into account, as *Withrow* permits, concerns about the practical operation of administrative agencies, we conclude that it is consistent with due process for the city attorney to serve as a member of the works and safety board so long as the attorney does not participate in any police and fire disciplinary proceedings.

## II

Petitioner presents three additional challenges to the trial court's decision, issues not reached by the Court of Appeals because of its disposition of the case. We resolve these issues against petitioner as well.

## A

Petitioner contends that he was denied due process when the hearing officer excluded from evidence the results of a polygraph examination that he voluntarily agreed to take. Petitioner argues that Chief McCarty indicated to him that the complaining witnesses were willing to take polygraph tests and that he should consider taking one as well. Petitioner and his counsel arranged a private test by an examiner endorsed by the polygraph operator suggested by Chief McCarty. Petitioner then submitted the results to the police department with the understanding that this submission would resolve the matters at issue. Petitioner contends the foregoing course of events amounted to a stipulation and waiver

as to the admissibility of the polygraph results and that the department reneged on this agreement.

"This Court has often repeated that evidence of a polygraph examination is not admissible in evidence unless both sides to the litigation agree in advance of the giving of such examination that it may be used in evidence by either party." *Brown v. State*, 587 N.E.2d 111, 113 (Ind.1992). Thus, polygraph examinations are generally inadmissible without a valid stipulation between the parties. *Sauzer–Johnsen v. Sauzer*, 544 N.E.2d 564, 568 (Ind.Ct.App.1989) (citing *Harris v. State*, 481 N.E.2d 382, 384 (Ind. 1985)). The trial court has discretion to admit polygraph results where there is a valid stipulation. *Id.* The stipulation must be in writing in criminal cases and signed by both defendant and prosecutor. *Id.* There is no such requirement in civil cases. *Sauzer*, 544 N.E.2d at 568.

The record shows that Chief McCarty did suggest to petitioner that he take a polygraph examination and that petitioner did in fact take a polygraph examination. There is, however, nothing in the record indicating that Chief McCarty's suggestion to defendant in anyway constituted a stipulation and waiver between petitioner and Mr. Acher as to the admissibility of the polygraph results of petitioner or the other complaining witnesses.[4] Therefore, we cannot say that it was an abuse of discretion for the hearing officer to deem petitioner's polygraph results inadmissible. We conclude that petitioner was not denied due process by the hearing officer's exclusion of his polygraph results.[5]

---

**4.** Petitioner contends that at the very least the hearing officer should have granted his motion for a continuance so that the complaining witnesses could have been offered a polygraph. He argues that if the complaining witnesses accepted such an offer, the polygraph results could have been stipulated into evidence, and if they refused, it would have allowed the. administration to reconsider the charges that were filed against petitioner. We find no law requiring a trial court or an hearing officer to grant a party's continuance request so that prosecution witnesses may be presented with the opportunity to take a polygraph examination. The hearing officer did not abuse his discretion in denying petitioner's continuance request.

**5.** *See also A.Y. v. Commonwealth, Department of Public Welfare*, 537 Pa. 116, 641 A.2d 1148, 1150 (1994) (hearing officer refused to consider polygraph results because results were not valid under the laws of the commonwealth); *Hawkins v. Marion Corr. Inst.*, 62 Ohio App.3d 863, 577 N.E.2d 720, 723 (1990) (administrative law judge properly did not rely on inadmissible evidence of polygraph tests); *Department of Public Safety v. Scruggs*, 79 Md.App. 312, 556 A.2d 736, 742 (1989) (polygraph evidence deemed not sufficiently reliable to be competent evidence in administrative proceedings); *City of Zanesville v. Sheets*, 38 Ohio App.3d 24, 525 N.E.2d 842, 844 (1987) (polygraph results held inadmissible in disciplinary proceeding despite city regulations to the contrary because introduction was forbid-

### B

 Petitioner contends that the trial court erroneously determined that there was substantial evidence to support the public works and safety board's determination that petitioner had neglected his duties because there was no credible evidence to support the board's findings and the transcript of the hearing is rife with inconsistencies by the prosecution witnesses. Judicial review of an administrative determination is limited to determining whether the administration possessed jurisdiction of the subject matter, whether the administration's decision was made pursuant proper procedures, was based upon substantial evidence, was not arbitrary or capricious, and was not in violation of any constitutional, statutory or legal principle. *City of New Albany v. Whiteman,* 250 Ind. 333, 335, 234 N.E.2d 646, 647 (1968) (citing *Warren v. Indiana Telephone Co.,* 217 Ind. 93, 26 N.E.2d 399 (1940)). The court reviewing an administrative determination may not determine questions of credibility or weigh conflicting evidence and choose that which it sees fit to rely upon in determining whether there was substantial evidence to support an administrative action. *See id.* We analyze petitioner's claim by reviewing the record as a whole to determine whether the administrative finding that petitioner neglected his duties is supported by substantial evidence. *Id.*; *see also Natural Resources Comm'n v. AMAX Coal Co.,* 638 N.E.2d 418, 423 (Ind. 1994) (citing *Board of Trustees of the Pub. Employees' Retirement Fund of Ind. v. Miller,* 519 N.E.2d 732, 733 (Ind.1988)).

The record reveals that three witnesses—another police officer and two women—testified to the following events. On July 2, 1989, while at a gas station in Franklin, petitioner pinched one of the women on the buttock. The two had only recently met and did not know each other personally. On July 9, 1989, while petitioner was on duty, petitioner and the two women met at an area outside the city limits and sat and talked. On July 13, 1989, petitioner and one of the women had sex at the city sewage plant. Petitioner was on duty at the time. Petitioner and the

witness had sex at least two more times during July of 1989. Petitioner was on duty both times.

 On August 3, 1989, petitioner enlisted the women's help in an attempt to play a trick on a third officer. The two women stood behind a mausoleum with a blanket and attempted to scare the officer by throwing the blanket over his head after petitioner led him to the designated mausoleum. After the trick failed, petitioner used his police radio to call the other officer to the same mausoleum in order to play the same trick on him. This officer testified that petitioner admitted to him that same night that he had had sex with the woman mentioned above. On August 19, 1989, while on duty, petitioner urinated on the windshield of a vehicle occupied by the two women at a gas station. Petitioner also attempted to throw his urine on the two women. Based on review of the evidence presented at petitioner's disciplinary hearing, we cannot say that the trial court erroneously concluded that there was substantial evidence in the record supporting the board's determination that petitioner was guilty of five counts of neglect of duty.

### C

Citing *Woods v. Thompson,* 539 N.E.2d 976 (Ind.Ct.App.1989), petitioner contends that the trial court acted contrary to law in failing to overturn the severity of petitioner's punishment because his punishment did not bear a rational relationship to the conduct for which he was found guilty. *Woods* involved a case where a former county police officer sued a county sheriff claiming wrongful discharge because the sheriff terminated the officer without the local merit board having made a determination as to whether there was cause to dismiss as required by law. *Id.* at 978. Here, petitioner makes no such claim. Thus, *Woods* is not controlling.

 Our review of petitioner's punishment is limited to considering whether the administrative body followed proper legal

den by state rules of evidence); *Sponick v. City of Detroit Police Dept.,* 49 Mich.App. 162, 211 N.W.2d 674, 686 (1973) (police departmental trial boards need not accept polygraph evidence as conclusive).

procedure in making a finding based on substantial evidence in accordance with relevant statutory and constitutional provisions. *Whiteman,* 250 Ind. at 335, 234 N.E.2d at 647. We may not substitute our judgment for that of the administrative body, or modify a penalty imposed in a disciplinary action, without a showing that such action was arbitrary or capricious. *Lilley v. City of Carmel,* 527 N.E.2d 224, 226 (Ind.Ct.App.1988). The trial court made no finding that the board acted arbitrarily or capriciously in fixing petitioner's punishment. The trial court's failure to overturn petitioner's punishment was not contrary to law.

### Conclusion

Having previously granted transfer, we now affirm the judgment of the trial court.

SHEPARD, C.J., and DeBRULER, DICKSON and SELBY, JJ., concur.