Thomas BREITWEISER and L.
Jae Breitweiser, Appellants
Petitioners,

v.

INDIANA OFFICE OF ENVIRONMEN-
TAL ADJUDICATION, Chief Environ-
mental Law Judge Wayne E. Penrod,
and David Ferguson, Appellees–Defen-
dants.

No. 49A04–0111–CV–505.

Court of Appeals of Indiana.

Oct. 2, 2002.

E. Scott Treadway, Tabbert Hahn Earnest & Weddle, LLP, Indianapolis, IN, Attorney for Appellants.

Steve Carter, Attorney General of Indiana, David L. Steiner, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellees, Indiana Office of Environmental Adjudication and Chief Environmental Law Judge Wayne E. Penrod.

George T. Patton, Jr., Daniel P. McInerny, Melinda R. Shapiro, Bose McKinney & Evans, Indianapolis, IN, Attorneys for Appellee David Ferguson.

## OPINION

BARNES, Judge.

### Case Summary

Thomas and L. Jae Breitweiser appeal the trial court's dismissal of their petition for judicial review. The petition challenged orders of Chief Environmental Law Judge ("ELJ") Wayne Penrod of the Indiana Office of Environmental Adjudication ("OEA") in which he refused to disqualify himself, refused to vacate orders previously entered by Administrative Law Judge ("ALJ") Linda Lasley, and entered a final order of default against the Breitweisers in their action challenging the granting of a confined animal feeding oper-

ation ("CAFO") permit to David Ferguson by the Indiana Department of Environmental Management ("IDEM").[1] We reverse and remand.

### Issues

We restate the dispositive issues before us as:

I.   whether the trial court could properly reconsider an earlier decision to deny the Appellees' motions to dismiss and for partial summary judgment; and

II.  whether the final order of default against the Breitweisers precludes judicial review of Judge Penrod's denial of the Breitweisers' motion to disqualify him.

### Facts[2]

IDEM issued a permit to Ferguson to operate a swine CAFO in Jefferson County. The Breitweisers, who lived in close proximity to the proposed CAFO, filed with the OEA a petition for administrative review of IDEM's decision to issue the CAFO permit on July 17, 1998. ELJ Lasley conducted proceedings in the case. In March 1999, a law firm contacted a member of the governor's executive staff, contending Lasley was not qualified to be an ELJ under the statutes creating the OEA and threatening to challenge any decisions Lasley made because of this alleged lack of qualification. After a meeting with this member of the governor's staff, Judge Penrod decided to name Lasley an ALJ, revoking her ELJ title, the difference being, as Lasley explained, that as an ALJ Lasley would issue recommended orders that could be appealed to Chief ELJ Penrod instead of issuing final orders appealable directly to a trial court.

On April 15, 1999, the Breitweisers filed a motion for change of ALJ. The motion alleged Lasley was not qualified to serve in the matter because (1) she was previously employed by IDEM and (2) she had not been practicing environmental or administrative law for five years.[3] Lasley denied the motion, which was subsequently affirmed by Judge Penrod on May 10, 1999.

---

1. The OEA, Judge Penrod, and Ferguson are all parties to this action, and we will refer to them collectively as the Appellees.

2. We note our agreement with counsel for the Appellees that much of the Breitweisers' brief contains improper editorial comments, unsupported factual allegations, and outright factual misrepresentations, especially with respect to Lasley's deposition testimony regarding her qualifications to serve as an ELJ or ALJ with the OEA. For example, the Breitweisers contend that Lasley "admits noncompliance with the open door law," apparently because she admitted having a closed-door meeting with a member of the governor's staff regarding her qualifications, but the Breitweisers fail to explain how this meeting regarding a personnel issue fell under the open door law and Lasley clearly did not admit that it did. Appellant's Br. p. 33. The Breitweisers also contend that Judge Penrod acted "out of spite" in issuing a notice of a proposed default order. Appellant's Br. p. 27. We strongly admonish counsel that this sort of language and misrepresentation is both unprofessional and repugnant. Nonetheless, we are convinced that reversal of the trial court's dismissal and a remand for further proceedings is necessary.

3. Indiana Code Section 4–21.5–7–6(a)(2) provides that an ELJ who acts as an "ultimate authority" must "have at least five (5) years of experience practicing administrative or environmental law in Indiana." It is undisputed that Lasley was admitted to the Indiana Bar in June 1995 and was hired by the OEA as an ELJ in June 1998. The Breitweisers also believe that by virtue of Lasley's former employment with IDEM she is not "independent of the department of environmental management," as required of ELJs by Indiana Code Section 4–21.5–7–6(a)(3). These questions of Lasley's qualifications, to which the Breitweisers devote much of their brief, are irrelevant to the issue of whether the trial court properly dismissed on jurisdictional grounds the Breitweisers' petition for judicial review of rulings made by Judge Penrod.

On May 14, 1999, however, Lasley disqualified herself from further participation in the case "in the interest of efficient case administration." Appellant's App. p. 212.

On May 19, 1999, the Breitweisers filed a motion to disqualify Judge Penrod and a motion to vacate all of Lasley's prior rulings; on May 25, 1999, the Breitweisers filed a motion for an expedited ruling on the May 19 motions. On May 26, 1999, Judge Penrod issued a "Notice of Proposed Order of Default" against the Breitweisers, who never filed a direct written response to this notice. Appellant's App. p. 233. On June 2, 1999, however, the Breitweisers filed a "Verified Complaint for Writ of Mandate, for Temporary Restraining Order and for Preliminary and Permanent Injunction" against the OEA and Judge Penrod in Marion County Superior Court on the day before an oral argument was scheduled on the proposed default order. Appellant's App. p. 238. Following a hearing, that court entered the following dismissal order on June 15, 1999:

> Defendants, Indiana Office of Environmental Adjudication and Chief Environmental Law Judge Wayne E. Penrod, agree to rule upon all pending motions in the underlying administrative matter. Defendants further agree to stipulate that Chief Environmental Law Judge Penrod will rule on Plaintiffs' Motion to Disqualify Chief Administrative Law Judge Penrod and Motion for Change of Administrative Law Judge filed May 19,

1999, prior to ruling upon other pending motions. Defendants further agree that Chief Environmental Law Judge Penrod will rule upon Plaintiffs' Motion to Vacate All Prior Rulings of Administrative Law Judge Lasley filed May 19, 1999.

Appellant's App. p. 306–07. On June 17, 1999, Judge Penrod entered three orders: one denying the motion for his disqualification, one denying the motion to vacate Lasley's rulings, and one finding the Breitweisers in default.

On July 16, 1999, the Breitweisers filed their petition for judicial review of Judge Penrod's June 17 orders in the Marion County Superior Court. Judge Gerald Zore of that court denied various motions by the Appellees, including a motion to dismiss, a motion to reconsider the denial of the motion to dismiss, and a motion for partial summary judgment. On January 9, 2001, the case was transferred to Judge Michael Keele of the newly-created Environmental Division of the Marion Superior Court. The Appellees requested Judge Keele to reconsider Judge Zore's previous denial of their motions to dismiss and for partial summary judgment. On October 1, 2001, Judge Keele entered an order dismissing the Breitweisers' complaint, stating that his court lacked jurisdiction over the matter because the OEA through Judge Penrod had found the Breitweisers to be in default. The Breitweisers now appeal.[4]

---

4. We note that the Brietweisers recently obtained summary judgment against the Environmental Protection Agency ("EPA") and IDEM in a suit brought in the United States District Court for the Southern District of Indiana. The highly-publicized judgment found that IDEM has failed to comply with the Clean Water Act in issuing permits to CAFOs because of deficiencies in IDEM's National Pollutant Discharge Elimination System ("NPDES") program. IDEM has been ordered to bring its NPDES program into compliance with the Clean Water Act, and the EPA has been directed to withdraw approval of that program if such compliance does not occur. *See Save the Valley, Inc., et al. v. United States Envtl. Prot. Agency, et al.,* 223 F.Supp.2d 997 (S.D.Ind. 2002). It does not appear that this judgment impacts the procedural issues raised in this appeal; namely, Ferguson was not a party in that case and it did not directly challenge the CAFO permit issued to him.

## Analysis

### I. Judge Keele's Reversal of Judge Zore's Rulings

█ As a threshold matter, the Breitweisers contend it was improper for Judge Keele to reconsider and reverse Judge Zore's rulings denying the Appellees' motions to dismiss and for partial summary judgment. In support of their argument, the Breitweisers cite cases holding that although "a court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, as a general rule courts should be reluctant to do so in the absence of extraordinary circumstances." *Indiana Farm Gas Production Co., Inc. v. Southern Indiana Gas and Elec. Co.*, 662 N.E.2d 977, 981 (Ind.Ct.App. 1996). The Breitweisers contend that no extraordinary circumstances existed that justified Judge Keele's reconsideration of Judge Zore's rulings.

█ The Appellees correctly note, however, that the "extraordinary circumstances" limitation on revisiting a prior decision is limited to the "law of the case" doctrine, which provides that "an appellate court's determination of a legal issue is binding both on the trial court on remand and the appellate court on a subsequent appeal, given the same case with substantially the same facts." *Id.* When the issue is whether a court can reconsider an earlier ruling while the case is still pending before that court, there is no such limitation. In fact, it is well-settled that "a trial court is not bound by its own earlier rulings unless they have been adopted by an appellate court's decision." *Serletic v. Noel*, 700 N.E.2d 1159, 1161 (Ind.Ct.App. 1998). A ruling by one judge that is not a final appealable order is not binding on a second judge assigned to the case, and the second judge is free to reconsider such a ruling and decide the issue involved as if before the trial court for the first time. *See id.* Here, Judge Zore's denials of the Appellees' motions to dismiss and for partial summary judgment were not final orders and were not binding upon Judge Keele. Judge Keele was free to reconsider and address the issues raised in those motions as if before the trial court for the first time, without limitation. "[U]ntil a judgment is entered, a trial court can amend, modify or change an earlier decision." *Id.*

### II. Dismissal of Judicial Review Petition

█ We now turn to the merits of the dismissal of the Breitweisers' petition for judicial review. The Appellees contend the trial court lacked jurisdiction to consider any of the questions raised in the petition because the Breitweisers were found to be in default in the proceedings before the OEA. Indiana Code Section 4–21.5–3–24, included within the Indiana Administrative Orders and Procedures Act ("AOPA"), provides in part:

(a) At any stage of a proceeding, if a party fails to:

(1) file a responsive pleading required by statute or rule;

(2) attend or participate in a prehearing conference, hearing, or other stage of the proceeding; or

(3) take action on a matter for a period of sixty (60) days, if the party is responsible for taking the action;

the administrative law judge may serve upon all parties written notice of a proposed default or dismissal order, including a statement of the grounds.

(b) Within seven (7) days after service of a proposed default or dismissal order, the party against whom it was issued may file a written motion requesting that the proposed default order not be imposed and stating the grounds relied upon. During the time within which a party may file a written motion under

this subsection, the administrative law judge may adjourn the proceedings or conduct them without the participation of the party against whom a proposed default order was issued, having due regard for the interest of justice and the orderly and prompt conduct of the proceedings.

(c) If the party has failed to file a written motion under subsection (b), the administrative law judge shall issue the default or dismissal order. If the party has filed a written motion under subsection (b), the administrative law judge may either enter the order or refuse to enter the order.

Indiana Code Section 4–21.5–5–4(b)(2) provides that a party who is in default waives the right to judicial review of agency action under the AOPA.

■■■■■ We agree with the Appellees that once an ALJ files notice of a proposed default order, the default order must be issued if the party against whom the notice was directed fails to file a written response to the notice within seven days. There is no indication the Breitweisers filed such a response. Indiana Code Section 4–21.5–3–24(c) plainly states that an ALJ "shall" enter a default order if a party fails to file a written response to a notice of a proposed default order, and Indiana case law presumptively treats "shall" as imposing a mandatory obligation. *See State, Indiana Civil Rights Comm'n v. Indianapolis Newspapers, Inc.,* 716 N.E.2d 943, 947 (Ind.1999). We further agree that, in most instances, such a failure to respond to a proposed default order and the resulting mandated issuance of a default order would absolutely preclude judicial review of any agency action taken in the case pursuant to Indiana Code Section 4–21.5–5–4(b)(2).

There is a twist in this case, however, that we cannot overlook. Specifically, the Breitweisers filed a motion to disqualify Judge Penrod on May 19, 1999, and requested an expedited ruling on that motion on May 25, 1999. Judge Penrod did not issue the notice of a proposed order of default until May 26, 1999. Thereafter, he effectively issued simultaneous rulings on June 17, 1999, denying the motion to disqualify and finding the Breitweisers were in default, as well as denying their motion to vacate Lasley's prior rulings in the case. This was done after the Marion County Superior Court ordered that Judge Penrod rule upon the disqualification motion "prior to" ruling on any other pending motions.

Under the AOPA, a party may petition for disqualification of an ALJ upon discovering facts establishing grounds for disqualification. Ind.Code § 4–21.5–3–9(d). Such grounds include, among others, "(1) bias, prejudice, or interest in the outcome of the proceeding; (2) failure to dispose of the subject of a proceedings in an orderly and reasonably prompt manner after a written request by a party; or (3) any cause for which a judge of a court may be disqualified." I.C. § 4–21.5–3–10. The statutes creating the OEA also provide that an ELJ may be "removed for cause" under the AOPA, the general state merit employment guidelines (Indiana Code Chapter 4–15–2), or the Code of Judicial Conduct. A ruling on a motion to disqualify an ALJ is a final order subject to judicial review. Ind.Code § 4–21.5–3–9(d).

There is no Indiana case law on the effect that a party's filing of a motion to disqualify an ALJ has on the ALJ's ability to act in proceedings involving that party. There are cases decided under the Indiana Trial Rules that hold "[w]hen presented with a timely motion for a change of judge, the trial judge is divested of jurisdiction to act in the case on any matter other than the motion for change of judge or emergency matters." *State ex rel. Wade v. Cass Circuit Court,* 447 N.E.2d 1082, 1083

(Ind.1983). If that rule were to be strictly applied to this case, that would mean Judge Penrod had no jurisdiction to enter the notice of a proposed order of default, or rule on any non-emergency matter, after the Breitweisers filed their motion for disqualification, regardless of the validity of the Breitweisers' stated grounds for disqualification.

■ However, those cases stating that a trial judge has no jurisdiction to act in a matter once a change of judge motion has been filed were decided under Trial Rule 76, which allows for one (but only one) automatic change of judge upon the timely filing of a motion requesting a change.[5] An ALJ cannot be automatically removed under the AOPA. The party seeking disqualification must demonstrate that grounds for disqualification as provided in the AOPA exist; the denial of a disqualification motion must be given deference by a reviewing court.[6] It would be improper to hold that the filing of an ALJ disqualification motion under the AOPA automatically deprives the ALJ of jurisdiction to act in the case, regardless of the motion's merits, where the automatic divesting of jurisdiction rule in the case of trial judges is based on Trial Rule 76's automatic change of judge provision. Rather, the general rule appears to be that where disqualification of a judge is discretionary and not automatic upon the filing of a motion, the mere filing of a disqualification motion does not immediately cause a judge to lose jurisdiction of the action and the judge may continue to preside over the case while a disqualification motion is pending. *See, e.g.,* 46 Am.Jur.2d *Judges* § 216 (1994); *Thomassen v. U.S.,* 835 F.2d 727, 732 (9th Cir.1987).

If it is later deemed that a disqualification motion should have been granted, however, then any non-emergency actions taken after the filing of the motion must be set aside. *See Falconer v. Meehan,* 804 F.2d 72, 78 (7th Cir.1986). It is for this reason that we reverse the dismissal of the Breitweisers' petition for judicial review. Our supreme court has noted in the context of administrative proceedings that "[d]ue process requires a neutral, or unbiased, adjudicatory decisionmaker. Scholars and judges consistently characterize provision of a neutral decision-maker as one of the three or four core requirements of a system of fair adjudicatory decision-making." *Rynerson v. City of Franklin,* 669 N.E.2d 964, 967 (Ind.1996) (quoting Kenneth C. Davis & Richard J. Pierce, Jr., Administrative Law Treatise § 9.8 (1994)).

■ The Breitweisers challenged Judge Penrod's ability to be a neutral decisionmaker prior to his issuance of the notice of a proposed order of default. We observe that although the entry of an order of default is mandated if a party does not respond to a proposed default order, the initial issuance of a proposed default order is discretionary with the ALJ. The statute states that an ALJ "may" issue a notice of a proposed default order if one of

---

5. There are also cases holding a trial court loses jurisdiction in a matter once a change of venue motion is filed, but these cases were decided under the old version of Trial Rule 76 that still permitted one automatic change of venue, which provision was removed in 1992. *See, e.g., City of Ft. Wayne v. State ex rel. Hoagland,* 168 Ind.App. 262, 268, 342 N.E.2d 865, 869 (1976).

6. The AOPA provides that a reviewing court may only grant judicial relief from an agency action that is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence." I.C. § 4–21.5–5–14(d).

the enumerated conditions is met. I.C. § 4–21.5–3–24(a). "The term 'may' in a statute ordinarily indicates a permissive condition and discretion." *Haltom v. Bruner and Meis, Inc.*, 680 N.E.2d 6, 9 (Ind.Ct.App.1997). Thus, the entry of the final order of default against the Breitweisers was not mandatory because the issuance of the proposed order in the first place was discretionary. If Judge Penrod should have disqualified himself, he was without power to issue the notice of a proposed default order and whether the Breitweisers responded to it is irrelevant. As such, we conclude that the Breitweisers are entitled to judicial review on the merits of their claim that Judge Penrod improperly denied the disqualification motion. Resolution of that issue on the merits should lead either to the dismissal of the other two claims of the Breitweisers' petition for judicial review or vacation of Judge Penrod's other rulings post-dating the filing of the Breitweisers' disqualification motion. This is in accordance with the principles we have announced regarding the general finality of a default order based upon a party's failure to respond to a proposed default order versus the nullity of any non-emergency orders issued by a judge after the filing of a disqualification motion that is or should have been granted.[7]

## Conclusion

Judge Keele was not limited in any way from reconsidering Judge Zore's prior denials of the Appellees' motions to dismiss and for partial summary judgment. We conclude, however, that reversal of the dismissal of the Breitweisers' petition for judicial review is required. We remand for consideration of Judge Penrod's denial of the Breitweisers' disqualification motion and for the entry of any necessary orders after that issue is addressed on the merits.

Reversed and remanded.

BAKER, J., and VAIDIK, J., concur.

---

7. This case highlights two important points. First, even if a judge believes a disqualification motion is without merit, such motion should be ruled upon expeditiously and ideally before the judge makes or issues any discretionary rulings or orders. Second, a party should respond to a notice of a proposed default order, even if the party believes the judge who issued the notice was without authority to do so.