



FILED

Feb 17 2026, 8:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

In the Matter of: A.B. and B.B. (Minor Children)

E.B. (Mother),

*Appellant-Respondent*

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

---

February 17, 2026

Court of Appeals Case No.
25A-JC-1315

Appeal from the Brown Circuit Court

The Honorable Mary Wertz, Judge

Trial Court Cause Nos.
07C01-2410-JC-105
07C01-2410-JC-106

---

**Weissmann, Judge.**

[1] Fifteen-year-old A.B. told her mother, E.B. (Mother), and younger sister, B.B., that A.B. had been molested by Mother's husband, R.F. (Stepfather). In response, Mother directed A.B. and B.B. (collectively Children) to keep the allegation secret. She did not seek treatment for A.B. or bar Stepfather's access to Children. The Indiana Department of Child Services (DCS) eventually became aware of the molestation allegation and petitioned to find Children to be children in need of services (CHINS).

[2] Mother was represented simultaneously by two attorneys during the CHINS proceedings. When one was hospitalized the week before the factfinding hearing, Mother sought an emergency continuance, which the trial court denied. The hospitalized counsel was discharged from the hospital and solely represented Mother at the factfinding hearing. After the hearing, the court found Children to be CHINS. Mother appeals, claiming that the trial court abused its discretion in denying the emergency continuance and in excluding evidence of a polygraph examination. We affirm.

## Facts

[3] In the fall of 2023, A.B. revealed to Mother and B.B. that Stepfather had repeatedly sexually touched her and also shown his penis to her. Mother was

upset by A.B.'s revelation but told Children not to tell anyone about it. Mother stated that if Stepfather went to jail, they would not be able to move into the new home that Stepfather was building. Mother did not enroll A.B. in therapy after A.B.'s molestation report or end Stepfather's access to Children.

[4] About a year later, B.B. was taken to her school counselor's office because she had been crying at school due to Mother's screaming and calling her "the B word" that morning. Tr. Vol. II, pp. 45, 51. B.B. then told the counselor about A.B.'s molestation allegations. The school reported this information to DCS, which arranged forensic interviews of Children the same day.

[5] When contacted by a DCS investigator, Mother stated that Stepfather may have accidentally touched A.B.'s pubic hair while giving her an abdominal massage for menstrual cramps. Mother maintained no sexual abuse had occurred and suggested the allegations were fueled by Children's father, S.B. (Father), with whom Mother shared a difficult co-parenting relationship.

[6] On October 29, 2024, DCS petitioned to find Children to be CHINS. The petitions alleged sexual abuse by Stepfather and neglect by Mother for failing to act when the abuse was reported. That same day, the trial court authorized Children's removal from Mother's custody. Children were placed with Father, with whom they have continued to live throughout these proceedings.

The trial court initially set the CHINS factfinding hearing for December 11, 2024. On December 3, 2024, Mother moved to continue the factfinding hearing based on discovery delays and to allow for Children's depositions. DCS and Father objected, and the trial court denied the motion. Then, on December 5, 2024, two attorneys from the same law firm entered their joint appearance for Mother and filed a renewed, unopposed joint motion to continue the factfinding hearing.[1] The court granted the motion and rescheduled the factfinding hearing for February 12, 2025.

On January 24, 2025, Mother again moved to continue the factfinding hearing, claiming that the case was complex and that her legal team had identified potential bias and procedural missteps by DCS. Mother argued that the complexity of the case and the allegations required an expert's input. She alleged that she needed time to depose 11 witnesses and to engage a clinical forensic psychologist to conduct a custody evaluation and serve as an expert witness. Mother also asserted that she needed time to arrange for the testimony of Children's former Guardian Ad Litem (GAL), claiming that individual's findings would contradict DCS's allegations.

---

[1] Mother had previously been represented by counsel from a different law firm. That attorney moved to withdraw her appearance as Mother's counsel on the same day the other two counsel filed their joint appearance.

After DCS objected, the trial court on January 27, 2025, denied Mother's motion for continuance. The court noted that Indiana Code § 31-34-11-1(b) required the factfinding hearing to occur no later than 120 days after the filing of the CHINS petition. As the CHINS petitions were filed on October 29, 2024, the 120-day deadline expired on February 26, 2025. The court also noted that Indiana Trial Rule 53.5, which had previously authorized extensions beyond the 120-day deadline for good cause, had been repealed, effective January 1, 2025.

The trial court noted that the only pertinent trial rule in effect at the time of the emergency motion for continuance was Indiana Trial Rule 7(D). This rule specifies requirements for continuance motions generally but does not explicitly authorize the continuance of a CHINS factfinding hearing beyond the 120-day deadline specified in Indiana Code § 31-34-11-1. The court concluded it was obligated to deny Mother's continuance because the delay she sought would place the factfinding hearing outside the statutory 120-day deadline.

On February 6, 2025, less than a week before the factfinding hearing, Mother moved for an emergency continuance based on the hospitalization of one of Mother's counsel (Hospitalized Counsel). Mother's motion was filed by her other counsel (Co-counsel), who portrayed himself as "surrogate counsel" for

Hospitalized Counsel rather than as Mother's co-counsel. Appellant's App. Vol. II, pp. 93-95. Co-counsel explained that Hospitalized Counsel had been admitted to the hospital and was on indefinite medical leave.

[12] DCS objected, noting that Co-counsel also had entered an appearance on behalf of Mother two months earlier. DCS further argued that Indiana Code § 31-34-11-1 precluded the court from granting a continuance beyond the 120-day deadline and that DCS was unwilling to waive the deadline. Noting that Children intended on testifying, DCS argued that prolonging the factfinding hearing was not in their best interests. Like DCS, Father also objected to Mother's requested continuance, contending that no waiver of the 120-day timeframe had occurred and that a continuance was not in Children's best interest.

[13] On February 10, 2025, two days before the factfinding hearing was set to begin, the trial court denied Mother's emergency motion after considering the "Emergency Motion, the record of these proceedings, and applicable law." *Id.* at 100. The trial court's order denying Mother's motion also included a footnote observing that Mother was represented by a second counsel.

[14] The next day Mother moved for a continuing objection to the court's denial of the continuance. Mother argued that the denial left her unable to properly prepare her defense, secure necessary expert witnesses, gather evidence, and

exercise her inherent right to meaningful legal representation. Mother noted that since the opening of the CHINS cases on October 29, 2024, 106 days had passed, during which 5 legal holidays had occurred. Mother added that Co-counsel was out of the country on vacation for approximately three weeks during that period and that Hospitalized Counsel was out of office for both the death of his mother-in-law as well as his own personal health issues, which had required his hospitalization.

[15] The factfinding hearing proceeded as scheduled on February 12, 2025. Hospitalized Counsel, now released from the hospital, appeared and represented Mother. Co-counsel did not appear, and the record does not reveal whether he was available to do so. At the start of the hearing, the trial court acknowledged Mother's standing objection to the denial of the continuance. The court stated:

> I will note that um, I did rely heavily on the 120 day uh, statute, strict deadline and find that uh, because the uh, 53.5 rule has been repealed and no longer exists my uh, analysis is we are back to the case law stating that that is a strict deadline. Court of Appeals may decide otherwise, but that's my determination[.] [A]lso, after reviewing all the pleadings filed I am not making a finding of good cause for a continuance um, there had been 60 days [after Co-counsel and Hospitalized Counsel entered their appearance on behalf of Mother], a little bit more to prepare and um, I understand that people are busy and it's difficult to get everything together, however um, I believe that is sufficient time to prepare for this hearing.

Tr. Vol. II, p. 6. During the hearing, A.B. testified that Stepfather had repeatedly sexually touched her and also shown his penis to her. Mother testified that she did not take any action after A.B. initially revealed the molestation because Mother did not believe any molestation had occurred.

[16] After the hearing concluded, the trial court issued findings of fact and conclusions of law. The court determined that DCS proved by a preponderance of the evidence that Stepfather had committed child molesting and/or sexual misconduct with a minor by touching A.B. on her chest and between her legs more than once when A.B. was 13 or 14 years old. The court also observed "outward indications of hostility" by Mother toward Children. Appellant's App. Vol. II, p. 111. Mother's account that Stepfather may have accidentally touched A.B.'s pubic region during menstrual cramp massages was not plausible, according to the court.

[17] The court concluded that Children were CHINS because Mother did not believe any sexual abuse occurred and has not committed to keeping Stepfather out of the home to prevent future sexual abuse. The court also determined that, as a result, Children needed care, treatment, and rehabilitation that they were not receiving and likely would not receive absent the court's coercive intervention.

[18] After a dispositional hearing, the trial court ordered Mother and Father to participate in a variety of services. Mother appeals.

## Discussion and Decision

[19] Mother challenges both the trial court's denial of her emergency motion to continue the factfinding hearing and its exclusion of the unstipulated polygraph examination that Stepfather underwent. We conclude that even if the trial court erred in denying the continuance, Mother has failed to establish the prejudice necessary for reversal. We also determine that the trial court did not abuse its discretion in excluding the polygraph evidence.

## I.  Denial of Emergency Continuance[2]

[20] Mother claims the trial court abused its discretion in denying her emergency motion for continuance, which was based on Hospitalized Counsel's illness and hospitalization. Mother contends her counsel's hospitalization constituted good cause for the delay and that good cause remains the applicable standard for continuances of CHINS factfinding hearings beyond the 120-day statutory deadline set forth in Indiana Code § 31-34-11-1—even after various rule and statutory changes since the CHINS petitions were filed in this case.[3] In

---

[2] We conducted oral argument solely on the continuance issue on January 22, 2026, at Frankton High School in Madison County. We thank the Frankton High School staff and students for both their gracious hosting of the event and their engaging post-argument discussions with us. We also thank both counsel for their able presentations and careful attention to this Court's order requiring them to present their arguments on this procedural question in this confidential case in a manner sensitive to the parties and their children and to the age of the student audience.

[3] At the time the CHINS petition was filed, Indiana Code § 31-34-11-1 (2024) provided:

> (a) Except as provided in subsection (b), unless the allegations of a petition have been admitted, the juvenile court shall complete a factfinding hearing not more than sixty (60) days after a petition alleging that a child is a child in need of services is filed in accordance with IC 31-34-9.

response, DCS asserts that the trial court did not abuse its discretion because no statute or court rule authorized a continuance based on good cause at the time of Mother's emergency continuance request. Even if error occurred, DCS argues that reversal is not required because Mother failed to show good cause or prejudice.

[21] A court's ruling on a motion to continue is generally subject to review for an abuse of discretion and "turns on the circumstances present in a particular case." *Matter of M.S.*, 140 N.E.3d 279, 285 (Ind. 2020). This Court previously has ruled that "'[a]n abuse of discretion may be found in the denial of a motion for a continuance when the moving party has shown good cause for granting the motion,' but 'no abuse of discretion will be found when the moving party

---

(b) The juvenile court may extend the time to complete a factfinding hearing, as described in subsection (a), for an additional sixty (60) days if all parties in the action consent to the additional time . . .

(d) If the factfinding hearing is not held within the time set forth in subsection (a) or (b), upon a motion with the court, the court shall dismiss the case without prejudice.

Subsection (d) of Indiana Code § 31-34-11-1 was amended effective July 1, 2025—after final judgment in this case—to provide:

(d) If the factfinding hearing is not held within the time set forth in subsection (a) or (b), upon a motion with the court, the court shall dismiss the case without prejudice unless the court finds that the extension is necessitated by:

(1) unanticipated, emergent circumstances;

(2) the circumstances of the case; or

(3) the Indiana Rules of Trial Procedure.

has not demonstrated that he or she was prejudiced by the denial.'" *In re K.W.*, 12 N.E.3d 241, 244 (Ind. 2014) (quoting *Rowlett v. Vanderburgh Cnty. Off. of Fam. & Child.*, 841 N.E.2d 615, 619 (Ind. Ct. App. 2006)). But several amendments to our Trial Court Rules and the applicable CHINS statute during the course of these proceedings have led to the dispute in this case: whether good cause is still sufficient to warrant a continuance of a CHINS factfinding hearing beyond the 120-day statutory deadline for that hearing. *See* Ind. Code § 31-34-11-1.

[22] As a preliminary matter, we note that Mother largely has failed to address two potentially dispositive sub-issues: (1) which versions of the applicable Trial Court Rules and CHINS statute govern, as all of them changed after the filing of the CHINS petition; and (2) whether Mother could establish good cause for a continuance based on the hospitalization of one of her counsel when she was represented by two attorneys from the same firm. But we need not address these issues because, even if we accept Mother's argument that the trial court abused its discretion in denying the continuance, she would not be entitled to reversal because she failed to show that she was prejudiced by that ruling. *In re K.W.*, 12 N.E.3d at 244.

[23] Mother generally claims that Hospitalized Counsel's preparation for the hearing was impaired because he was hospitalized during part of the week before the hearing. She fails to specify how her defense was impacted other than to allege that this "sudden, unavoidable loss of the final, critical preparation week" made the securing of a forensic psychologist's testimony "difficult or impossible."

Appellant's Reply Br., p. 9. But Mother does not reveal why Co-Counsel could not have done that once Hospitalized Counsel became temporarily incapacitated. She also does not detail what, if any, efforts to prepare Mother's defense were made: (1) by Hospitalized Counsel and Co-Counsel prior to Hospitalized Counsel's illness; or (2) by Co-Counsel once he became aware of Hospitalized Counsel's illness.

[24] Nor does Mother detail any actions that had been taken to locate a forensic psychologist during the 100 days between the filing of the CHINS petitions and her emergency motion for continuance. Her earlier motion to continue, filed January 24, 2024—two weeks before her emergency continuance request and three weeks before the scheduled factfinding hearing—noted that Mother had not identified or recruited a forensic psychologist to testify at that point. Yet, the case then had been pending for more than three months, and the factfinding hearing was only three weeks away. As the record is silent as to Mother's efforts to recruit the forensic psychologist after that, and no such expert had been recruited as of the date of the emergency motion five days before the hearing, Mother has failed to show that Hospitalized Counsel's illness and the denial of the emergency continuance were the reasons for her lack of a forensic psychologist. Mother's generalized and unsubstantiated claims of prejudice simply are not enough to win reversal. *See In re K.W.*, 12 N.E.3d at 244.[4]

---

[4] Mother references "due process" four times in her continuance argument in her initial brief. However, she does not specifically claim a denial of due process, cite the standard for determining whether a due process

## II. Exclusion of Polygraph Results

[25] Mother next claims that the trial court erred by excluding from evidence the results of Stepfather's polygraph examination, which allegedly supported Mother's claim that A.B.'s molestation accusations were false.

[26] Polygraph evidence "is generally disfavored" and "generally inadmissible without a valid stipulation between the parties." *Rynerson v. City of Franklin*, 669 N.E.2d 964, 970 (Ind. 1996); *J.R.T. v. State*, 783 N.E.2d 300, 305 (Ind. Ct. App. 2003). Although Indiana law does not require a written stipulation for polygraph evidence to be admitted in civil cases as it does in criminal cases, some form of stipulation between the parties remains necessary before such evidence can be introduced. *See J.R.T.*, 783 N.E.2d at 306. When a valid stipulation exists, the trial court has discretion to determine whether to admit the polygraph evidence. *Rynerson*, 669 N.E.2d at 970.

[27] Mother acknowledges that no such stipulation exists here. Relying on *In re A.J.*, 877 N.E.2d 805 (Ind. Ct. App. 2007), she nonetheless argues that the trial court abused its discretion in excluding the polygraph evidence. In *A.J.*, this Court affirmed a trial court's admission of an expert therapist's treatment recommendations for two parents who were facing termination of their parental rights, although those recommendations were based partly on the results of

violation has occurred, or analyze the issue under that standard. Accordingly, to the extent that Mother intended to raise a due process claim, she has waived it by failing to provide cogent argument. *See* Ind. Appellate Rule 46(A)(8)(a) (requiring that the appellant's brief "contain the contentions of the appellant on the issues presented, supported by cogent reasoning").

unstipulated polygraphs that the parents underwent. *Id.* at 813-15. Mother argues that the polygraph evidence here was admissible under *A.J.* because she intended to introduce the polygraph examination results through the testimony of an expert witness—the polygraph examiner.

[28] But Mother fails to recognize the distinction between, on one hand, an expert using polygraph results to form an opinion on a different matter and, on the other hand, an expert testifying solely as to the polygraph examination and results. Expert witnesses "may testify to opinions based on inadmissible evidence, provided that it is of the type reasonably relied upon by experts in the field." Ind. Evidence Rule 703. Thus, under Evidence Rule 703, the therapist in *A.J.* could offer an opinion based partly on the inadmissible polygraph examinations because the therapist testified that the polygraph evidence was of the type reasonably relied upon by experts in the therapy field. But where, as here, the witness merely reveals the examination results—instead of reaching an expert opinion on a different matter based partly on the polygraph results—Indiana law requires stipulated admission or the evidence may be excluded. *Id.* at 813-14.

[29] Mother also argues that whatever purpose the stipulation requirement may serve in criminal cases — for instance, protecting a criminal defendant's Fifth Amendment right against self-incrimination by ensuring the defendant knowingly and voluntarily agrees to admission of the polygraph evidence — this requirement has no similar justification in the civil context. *See*, *e.g.*, *Davis v. State*, 749 N.E.2d 552, 556-57 (Ind. Ct. App. 2001) (finding no Fifth

Amendment violation when the stipulation to admit polygraph evidence was valid). Moreover, if polygraph evidence may contribute to an expert's opinion, Mother asserts, the polygraphs should be independently admissible.

[30] But the stipulation requirement is not grounded solely in Fifth Amendment protections. Indiana's longstanding disfavor of polygraph evidence rests primarily on the inherent unreliability of such examinations and the risk that a factfinder will attach undue weight to them—concerns that apply with equal measure whether the proceeding is criminal or civil. *C.T.S. v. State*, 781 N.E.2d 1193, 1198 n.6 (Ind. Ct. App. 2003) (rejecting the argument that the polygraph inadmissibility rule should not apply outside criminal proceedings after noting that "polygraph examinations are inadmissible because of their inherent unreliability, and this reasoning applies" outside the criminal arena); *see also Rynerson v. City of Franklin*, 669 N.E.2d 964, 970 (Ind. 1996) (applying the stipulation requirement in a city employee's civil disciplinary proceeding); *Sauzer-Johnsen v. Sauzer*, 544 N.E.2d 564, 568-69 (Ind. Ct. App. 1989) (affirming admission of polygraph evidence in a marital dissolution action based on the parties' stipulations to the polygraphs).

[31] Nor does the stipulation requirement function as a judicial endorsement of the polygraph's reliability. Indeed, our courts have repeatedly expressed serious reservations on that score. *See Gray v. State,* 758 N.E.2d 519, 522 (Ind. 2001) (noting that the rule against inadmissibility of unstipulated polygraph evidence is based on "the inherent unreliability of polygraph examinations"); *In re B.W.*,

17 N.E.3d 299, 309 (Ind. Ct. App. 2014) ("[I]t is well settled that polygraph examinations are notoriously unreliable").

[32] Rather, the stipulation operates somewhat like estoppel: when both parties validly agree in advance that the results of a polygraph examination are admissible, neither may challenge its later introduction at trial. *See J.R.T.,* 783 N.E.2d at 305 (given the seeming contradiction in finding polygraph evidence unreliable but allowing such unreliable evidence to be admitted when stipulated, "[p]erhaps it is more accurate to state that a party who stipulates to such evidence loses the right to object to its admissibility"). This estoppel-type rationale is not tethered to the Fifth Amendment and applies in any proceeding.

[33] If anything, the concerns animating the stipulation requirement are amplified in CHINS proceedings. Unlike ordinary civil litigation between private parties, CHINS cases are governed by a statutory framework whose central purpose is the protection of children. *See* Ind. Code § 31-34-1 *et seq.* The court's paramount obligation is to the child's safety and well-being, and the purpose of the CHINS adjudication "is to protect children, not punish parents." *See In re N.E.*, 919 N.E.2d 102, 105-06 (Ind. 2010). The CHINS court's credibility determinations carry direct consequences for whether a child remains in or is removed from a potentially dangerous environment. Allowing unstipulated polygraph evidence to influence those determinations would risk undermining rather than advancing the protective aims of the CHINS framework.

The trial court was well within its discretion to exclude the polygraph evidence, and we decline Mother's invitation to carve out a civil-case exception to this longstanding rule.

## Conclusion

As Mother did not establish prejudice from the denial of her emergency motion for continuance or an abuse of discretion arising from the exclusion of the non-stipulated polygraph evidence, we affirm the trial court's judgment.

Kenworthy, J., and DeBoer, J., concur.

ATTORNEYS FOR APPELLANT

Bryan L. Ciyou
Ciyou & Associates, P.C.
Indianapolis, Indiana

Anne M. Lowe
Fugate Gangstad Lowe, LLC
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

David E. Corey
Deputy Attorney General
Indianapolis, Indiana